NUMBER 13-02-429-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


ENTRAVISION COMMUNICATIONS CORPORATION , Appellant,

v.



DR. ALBERTO BELALCAZAR , Appellee.

___________________________________________________________________


On appeal from the 94th District Court

of Nueces County, Texas.

__________________________________________________________________



O P I N I O N

Before Chief Justice Valdez and Justices Hinojosa and Rodriguez

Opinion by Justice Rodriguez


 Appellant, Entravision Communications Corporation (Entravision), a media defendant, brings this interlocutory appeal
pursuant to section 51.04 of the Texas Civil Practices and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(6) (Vernon Supp. 2003) (authorizing interlocutory appeal from denial of summary judgment based on claim
against or defense by member of media). Dr. Belalcazar sued Entravision for injuries allegedly sustained as a result of a
television news broadcast on KORO Channel 28. (1) Entravision filed traditional and no-evidence motions for summary
judgment, both of which were denied by the trial court. See Tex. R. Civ. P. 166a(c), (i). Entravision appeals from the
denial of its motions.

 Entravision contends the trial court erred in denying its traditional motion for summary judgment because the broadcast
was true and/or substantially true and privileged. It further asserts the trial court erred in denying its no-evidence summary
judgment motion because Dr. Belalcazar provided no evidence that the statements at issue were false and/or defamatory, or
that Entravision was at fault. We affirm.

I. BACKGROUND

 On December 22, 1997, Ruby Ann Ernst filed a medical malpractice suit against Dr. Belalcazar and Doctor's Regional
Medical Hospital (Hospital) alleging Dr. Belalcazar and the Hospital were negligent in failing to remove a laparotomy pad
from her abdomen during an appendectomy. On September 3, 1999, Ernst's attorney filed a motion to dismiss Dr.
Belalcazar from the lawsuit. The motion stated "the Plaintiff no longer desires to prosecute her claims against Defendant
Alberto L. Belalcazar, M.D." On September 8, 1999, without stating a reason, the trial court signed an agreed order
dismissing Dr. Belalcazar from the case. Ernst amended her pleading to reflect that her claims of negligence were only
against the Hospital. Dr. Belalcazar was not referenced in the amended petition. On March 6, 2000, Ernst's lawsuit
proceeded to trial against the Hospital.

 On March 8, 2000, KORO Channel 28 aired a story about the Ernst lawsuit during its 5:00 p.m. and 10:00 p.m. news
programs. The news anchor began the segment by stating "[a] woman went to get her appendix operated upon but the
doctors forgot to take 18 inches of gauze out of her body." Following video of Ernst walking with a walker and a brief
interview with Ernst's mother, the Hospital was shown while news reporter Emma Mota explained "[Ernst's] tragedy began
almost three years ago when she received an operation on her appendix at this hospital." Mota continued, "as a consequence
of this supposed medical error, the patient has filed a million dollar lawsuit against the hospital and says her life will never
be the same." While showing Dr. Belalcazar's office with his name prominently displayed in front of it, Mota reported that
"a legal document says Dr. Alberto Belalcazar, who operated on [Ernst], left an 18 inch piece of gauze inside her
abdomen." Later in the broadcast Mota stated, 

 [a]nd for that supposed negligence, [Ernst] filed a lawsuit demanding two million dollars-since it was because of the gauze
in her abdomen that she has lots of medical bills and she suffered pain. Especially when she walks with a cane. Her
affliction keeps her from doing the things she would normally do.



 Two follow-up broadcasts discussed the lawsuit. In each it was explained that the lawsuit was filed after Ernst was
operated on and gauze was left in her body. However, only the Hospital was identified as a party. Dr. Belalcazar's name
was not mentioned, nor was his office shown in these subsequent broadcasts.

 Entravision filed a traditional motion for summary judgment based on its defenses of substantial truth and privilege. It
filed a no-evidence summary judgment motion on the basis that there was no evidence that Entravision was negligent, (2) or
that any statements it made regarding Dr. Belalcazar were false and/or defamatory. The trial court denied both motions.

II. TRADITIONAL SUMMARY JUDGMENTS

 By its first issue, Entravision contends the trial court erred in denying its traditional motion for summary judgment because
it established the broadcast was substantially true and privileged.

A. Standard of Review

 A traditional summary judgment is proper when the summary judgment proof establishes as a matter of law that there is no
genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action or when the
defendant has conclusively established all elements of its affirmative defense. Am. Tobacco Co., Inc., v. Grinnell, 951
S.W.2d 420, 425 (Tex. 1997); Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996); Crain v. Smith, 22 S.W.3d 58, 59 (Tex.
App.-Corpus Christi 2000, no pet.); see Tex. R. Civ. P. 166a(c). A defendant moving for summary judgment based on an
affirmative defense has the burden to conclusively prove each element of the affirmative defense as a matter of law. See
Montgomery v. Kennedy, 669 S.W.2d 309, 310-11 (Tex. 1984).

 We review the trial court's granting or denying of a traditional motion for summary judgment de novo. San Antonio
Express News v. Dracos, 922 S.W.2d 242, 247 (Tex. App.-San Antonio 1996, no writ); see Natividad v. Alexsis, Inc., 875
S.W.2d 695, 699 (Tex. 1994); Tex. Commerce Bank-Rio Grande Valley v. Correa, 28 S.W.3d 723, 726 (Tex. App.-Corpus
Christi 2000, pet. denied). An appellate court should reverse an order denying a traditional motion for summary judgment
under rule 166a(c) and render judgment in the movant's favor only if the summary judgment evidence establishes there is
no genuine issue of material fact and the movant is entitled to judgment as a matter of law on a ground set forth in the
motion. Dracos, 922 S.W.2d at 247. Furthermore, in reviewing a traditional summary judgment, "all evidence is to be
construed in favor of the non-movant, to whom every reasonable inference is allowed and on whose behalf all doubts are
resolved." Alvarez v. Anesthesiology Assocs., 967 S.W.2d 871, 874 (Tex. App.-Corpus Christi 1998, no pet.). This
standard applies to summary judgment motions in defamation actions. Carabajal v. UTV of San Antonio, Inc., 961 S.W.2d
628, 630 (Tex. App.--San Antonio 1998, pet. denied) (citing Casso v. Brand, 776 S.W.2d 551, 558 (Tex. 1989)).

B. Substantial Truth Defense

 Entravision contends the trial court erred in denying its traditional motion for summary judgment because the broadcast at
issue was substantially true. (3) A showing of substantial truth of defamatory words will defeat a defamation cause of
action. McIlvain v. Jacobs, 794 S.W.2d 14, 15-16 (Tex. 1990) (holding broadcaster's establishing substantial truth of
broadcast as matter of law defeated defamation action). The test of substantial truth is "whether the alleged defamatory
statement was more damaging to [plaintiff's] reputation, in the mind of the average listener, than a truthful statement would
have been." Id. at 16; see Turner v. KTRK Television, Inc., 38 S.W.3d 103, 115 (Tex. 2000) (noting substantial truth
doctrine "precludes liability for a publication that correctly conveys a story's 'gist' or 'sting' although erring in the details");
Langston v. Eagle Printing Co., 797 S.W.2d 66, 69 (Tex. App.-Waco 1990, no writ) (concluding statement is substantially
true even if it greatly exaggerates plaintiff's misconduct, as long as the average reader would not attach any more
opprobrium to the plaintiff's conduct merely because of the exaggeration); Crites v. Mullins, 697 S.W.2d 715, 717 (Tex.
App.-Corpus Christi 1985, writ ref'd n.r.e.) (holding published account of judicial proceedings involving plaintiff
substantially true as matter of law, thus, conditionally privileged).

 A publication can convey a defamatory meaning by omitting or juxtaposing facts, even though each individual statement
considered alone might be literally true or non-defamatory. Turner, 38 S.W.3d at 114. This is so because a reasonable
person's interpretation is based on the entirety of a publication and not individual statements. Id. at 115. Thus, a defendant
cannot be held liable for presenting a true account of events regardless of what someone might conclude from that account. 
Id. However, the same does not hold true when there is an omission of material facts, or a misleading presentation or
juxtaposition of true facts. Id.; see Huckabee v. Time Warner Entm't Co., 19 S.W.3d 413, 425 (Tex. 2000); Express Publ'g
Co. v. Gonzalez, 350 S.W.2d 589, 592 (Tex. Civ. App.-Eastland 1961, writ ref'd n.r.e.); see also Golden Bear Distrib. Sys.
v. Chase Revel, Inc., 708 F.2d 944, 948-49 (5th Cir. 1983) (applying Texas law).

 Entravision contends the trial court erred in denying its traditional motion for summary judgment because the broadcast of
March 8, 2000, was an accurate recitation of the allegations made by Ernst against Dr. Belalcazar. Entravision also asserts
that the failure to mention Dr. Belalcazar was dismissed from the lawsuit does not change the substantial truthfulness of the
broadcast, and is not any more damaging to Dr. Belalcazar's reputation than the undisputed facts. Further, Entravision
asserts there was no mention or implication in the report that Dr. Belalcazar was a bad doctor, was guilty of any
wrongdoing, or was liable in any way to Ernst. We disagree.

 The summary judgment evidence established that Dr. Belalcazar was not a party to the two million dollar lawsuit when the
broadcast aired. Moreover, the videotape of the broadcast, attached as summary judgment evidence, established that during
the broadcast, Dr. Belalcazar's office, with his name prominently displayed, was shown. (4) During this same segment of the
broadcast, Mota reported that a legal document said Dr. Belalcazar left the gauze inside Ernst's abdomen. However, the
legal document was not identified, and although the petition naming Dr. Belalcazar as a party had been superceded by an
amended petition which did not reference the doctor, no mention was made of Dr. Belalcazar's dismissal from the lawsuit.

 While Texas law precludes defamation claims based on factual inaccuracies that have no effect on the gist or sting of the
publication, we cannot conclude that reporting matters regarding the Ernst lawsuit from in front of Dr. Belalcazar's office,
when in fact, the doctor had been dismissed, did not cast greater suspicion on Dr. Belalcazar's conduct and did not damage
his reputation more so, in the mind of the average reader, than the literal truth would have done. See McIlvain, 794 S.W.2d
at 16. Because a reasonable person's interpretation is on the entirety of a publication, even though each individual
statement considered alone might be literally true, we cannot conclude that the broadcast at issue did not convey a
defamatory meaning when it juxtaposed Dr. Belalcazar's office and name with the report that a doctor left gauze in Ernst's
abdomen, and yet did not mention Dr. Belalcazar's dismissal. See Turner, 38 S.W.3d at 114-15.

 Therefore, construing the evidence in favor of Dr. Belalcazar, the non-movant, fact issues remain regarding Entravision's
substantial truth defense. See Alvarez, 967 S.W.2d at 874. Entravision has failed to conclusively establish all elements of
its affirmative defense as a matter of law. See Grinnell, 951 S.W.2d at 425; Walker, 924 S.W.2d at 377; Crain, 22 S.W.3d
at 59; see also Tex. R. Civ. P. 166a(c). The trial court did not err in denying Entravision's traditional summary judgment
on this basis.

C. Privilege Defense 

 Entravision also asserts in its first issue that the broadcast was privileged as a fair, accurate, and impartial account of a
judicial proceeding. The publication by a newspaper of a fair, true, and impartial account of a judicial proceeding is
privileged and is not a ground for a libel action. See Tex. Civ. Prac. & Rem. Code Ann. § 73.002 (Vernon 1997); see also
Cox Broad. Corp. v. Cohn, 420 U.S. 469, 492 (1975) (special protected nature of accurate reports of judicial proceedings
through the First Amendment of the United States Constitution has repeatedly been recognized); Wavell v. Caller-Times
Publ'g Co., 809 S.W.2d 633, 635 (Tex. App.-Corpus Christi 1991, writ denied), abrogated on other grounds by Cain v.
Hearst Corp., 878 S.W.2d 577 (Tex. 1994) (both United States and Texas Constitutions "prohibit civil damages against a
newspaper for accurate or substantially true accounts of newsworthy matters arising from and pertaining to judicial
proceedings"). Privileges applicable to newspapers and periodicals also apply to broadcasters. See Christy v. Stauffer
Publ'ns, Inc., 437 S.W.2d 814, 815 (Tex. 1969).

 We have concluded, however, Entravision did not establish the substantial truth of its account of the judicial proceeding,
specifically as it relates to Dr. Belalcazar's dismissal. The accuracy of the accounts has not been shown. Therefore, the
privilege does not apply, as a matter of law, in this case. The court did not err in denying the summary judgment on this
basis. 

 Entravision's first issue is overruled.

III. NO-EVIDENCE SUMMARY JUDGMENTS

 By its second issue, Entravision contends the trial court erred in denying its no-evidence motion for summary judgment
because Dr. Belalcazar failed to present evidence of negligence.

A. Standard of Review

 A no-evidence summary judgment asserts that there is no evidence of one or more essential elements of claims upon which
the adverse party would have the burden of proof at trial. Tex. R. Civ. P.166a(i). A no-evidence summary judgment is
essentially a pretrial directed verdict, to which the appellate courts apply a legal sufficiency standard of review. Gen. Mills
Rests., Inc. v. Tex. Wings, Inc., 12 S.W.3d 827, 832-33 (Tex. App.-Dallas 2000, no pet.); AMS Constr. Co., Inc. v. Warm
Springs Rehab. Found., Inc., No. 13-01-286-CV, 2002 Tex. App. LEXIS 8246, at *14 (Tex. App.-Corpus Christi Nov. 21,
2002, no pet.). "Like a directed verdict, then, the task of the appellate court is to determine whether the plaintiff has
produced any evidence of probative force to raise fact issues on the material questions presented." Jackson v. Fiesta Mart,
979 S.W.2d 68, 70 (Tex. App.-Austin 1998, no pet.). A no-evidence summary judgment is properly granted only if the
non-movant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to the
challenged element of the claims. Tex. R. Civ. P. 166a(i); Jackson, 979 S.W.2d at 70-71. The plaintiff, however, is not
required to marshal his proof. Tex. R. Civ. P. 166a(i), cmts. His response need only point out evidence that raises a fact
issue on the challenged element. See id.; Saenz v. S. Union Gas Co., 999 S.W.2d 490, 493-94 (Tex. App.-El Paso 1999,
pet. denied). Again, as in a traditional summary judgment, "all evidence is to be construed in favor of the non-movant, to
whom every reasonable inference is allowed and on whose behalf all doubts are resolved." Alvarez, 967 S.W.2d at 874.

B. Negligence Element of Cause of Action

 To prevail on a defamation claim, the plaintiff must prove that the defendant (1) published a statement (2) that was
defamatory about the plaintiff (3) while acting with negligence if the plaintiff was a private individual, regarding the truth
of the statement. WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998). A private individual may recover
damages from a publisher for defamation upon a showing that the media defendant knew or should have known that the
publication was false. Foster v. Laredo Newspapers, Inc., 541 S.W.2d 809, 819-20 (Tex. 1976). In addition, the liability
of a broadcaster of a defamatory falsehood may not be predicated on a factual misstatement whose content would not warn
a reasonably prudent broadcaster of its defamatory potential. Id.

 Throughout the broadcast, only the Hospital was mentioned or referred to as a party to the lawsuit. For example, it was
reported that "the patient has filed a million dollar lawsuit against the hospital;" "[h]ospital authorities . . . did not want to
comment about the precise allegations but admit to some errors;" "the attorneys who are representing the hospital admitted
in this court that they were negligent when the operation was conducted;" and "attorneys who represent the hospital
speculate the trial in this case will continue until next week." However, Entravision's news anchor began the broadcast by
stating "[a] woman went to get her appendix operated on but the doctors forgot to take 18 inches of gauze out of her body." 
Mota opened her segment of the report by saying "as a consequence of this supposed medical error, the patient has filed a
million dollar lawsuit against the hospital and says her life will never be the same." Standing in front of Dr. Belalcazar's
medical office, Mota continued, in the present tense, that "a legal document says Dr. Alberto Belalcazar, who operated
upon [Ernst], left an 18 inch piece of gauze inside her abdomen." The broadcast concluded with "for that supposed
negligence, [Ernst] filed a lawsuit demanding $2 million--since it was because of this gauze in her abdomen that she has
lots of medical bills and she suffered pain."

 Dr. Belalcazar, whose summary judgment evidence included a video tape of Entravision's newscast, has produced some
evidence of probative force to raise fact issues on the negligence issue: whether Entravision should have known the
publication was false, and whether the factual misstatement would warn a reasonably prudent broadcaster of its defamatory
potential. See id. Therefore, construing all evidence in favor of Dr. Belalcazar, the non-movant, see Alvarez, 967 S.W.2d
at 874, we conclude Dr. Belalcazar brought forth more than a scintilla of evidence as to the negligence element of his
defamation claim. See Tex. R. Civ. P. 166a(i); Jackson, 979 S.W.2d at 70-71. We overrule Entravision's second issue.

V. MOTION TO REFILE EXPERT'S AFFIDAVIT

 Dr. Belalcazar has filed a motion with this Court requesting permission to reference the affidavit of his expert, Joseph C.
Goulden, that was misfiled in the summary judgment proceeding below. Entravision has conceded it did not object to the
misfiling of the affidavit in the trial court, and has not objected on appeal. Even so, having determined that Dr. Belalcazar,
through the production of the video tape of the broadcast, has provided this Court with more than a scintilla of evidence on
the negligence element of his defamation claim, we need not consider his expert's affidavit. Thus, we deny Dr. Belalcazar's
motion to refile his expert's affidavit as moot in this case.

VI. CONCLUSION

 The judgment of the trial court is affirmed.

 

NELDA V. RODRIGUEZ

Justice

Opinion delivered and filed

this 27th day of February, 2003.

 

1. [1]Entravision owns Channel 28.

2. In its no-evidence summary judgment motion and now on appeal, Entravision also contends that there is absolutely no
evidence that Entravision was grossly negligent. However, it does not assert there is no evidence of actual malice. Within
the context of a defamation cause of action, however, actual malice is the standard for awarding exemplary damages. See
Mitre v. Brooks Fashion Stores, Inc., 840 S.W.2d 612, 623-24 (Tex. App.-Corpus Christi 1992, writ denied), overruled on
other grounds by Cain v. Hearst Corp., 878 S.W.2d 577 (Tex. 1994) (if defamation is characterized in terms of negligent
breach of duty, then "gross negligence" sufficient to support exemplary damages would require showing of actual malice).
Because Entravision did not assert no evidence as to actual malice, this issue is not before us in this appeal. See Tex. R.
Civ. P. 166a(i) (no-evidence motion must state elements as to which there is no evidence).

3. Entravision also contends the broadcast was true. However, because we conclude below that there remains a fact issue
as to the substantial truth of the broadcast, we need not address Entravision's truth defense.

4. Dr. Belalcazar also testified that the KORO reporter was standing in front of his office while reporting on the Ernst
lawsuit.