We overrule the motions for rehearing and rehearing en banc.

Justice PEMBERTON Not Participating.

CRAM ROOFING CO., INC., Appellant,

v.

Dennis J. PARKER, Appellee.

No. 04–01–00723–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 17, 2003.

Original Unchanged Dissenting
Opinion Aug. 29, 2003.

W. Wendell Hall, Rosemarie Kanusky, Fulbright & Jaworski, L.L.P., Kay L. Grimes, Law Office of Kay L. Grimes, San Antonio, and Stephen C. Haynes,Law Offices of Stephen C. Hayes, McAllen, for Appellant.

Andrew E. Toscano, Gene Toscano, Inc., San Antonio, and Geoffrey N. Courtney, Austin, for Appellee.

Sitting En Banc: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

Cram Roofing Company appeals the trial court's judgment against it in Dennis Parker's libel suit. The case is now before the court on Cram Roofing's motion for rehearing en banc. The motion for rehearing en banc is denied; however, we withdraw our majority en banc opinion and vacate our judgment of August 29, 2003, and substitute the following in their stead. The dissenting opinion issued on August 29, 2003 remains unchanged. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In November 1998, Cram Roofing hired Parker as the general manager of its branch office in the Rio Grande Valley. Cram Roofing also hired Joe Zamora as the production manager. In early July 1999, Zamora abruptly quit. Given the circumstances of Zamora's resignation and the subsequent disappearance of the work crew, as well as his inability to immediately locate or contact Parker, Cram Roofing's president, Gary Cram, assumed that Parker had also resigned and closed the Valley office. According to Parker, he had not resigned; rather, he was terminated by Cram when Cram closed the Valley office.

Shortly after Cram Roofing's Valley office was closed, Parker and Zamora started a new business in direct competition with Cram Roofing. In response, on August 25, 1999, Cram Roofing's attorney wrote twelve identical letters to various suppliers and roofing companies that Cram Roofing believed would become Parker's prospective customers. The August 25, 1999 letter stated:

I have been retained by Cram Roofing Company, Inc. ("Cram Roofing") to represent its interest in pursuing a legal action against Joe Zamora ("Zamora") and Dennis Parker ("Parker"), and potentially against your company.

On or about July 5, 1999, Zamora and Parker voluntarily terminated their employment with Cram Roofing. As a condition of their employment with Cram Roofing, both Zamora and Parker executed a two-year, enforceable Noncompetition and Confidentiality Agreement ("the Agreement"). The Agreement provides, among other things, that neither party shall, in any capacity, compete within a 100 mile radius of Cram Roofing's central office in San Antonio, Texas, or its branch office in Pharr, Texas. The Agreement further states that neither party shall contact or solicit for any competitive purpose any person or entity who is then a customer, client, vendor or supplier of Cram Roofing, or who was a customer, client or supplier of Cram Roofing within the preceding two years.

Cram Roofing intends to vigorously pursue a legal action against all entities that have conspired or in any way acted in concert to induce breach of the Agreement or that have tortiously interfered with Cram Roofing's contracts. Said potential causes of action include, but may not be limited to civil conspiracy, misappropriation of trade secrets, tortious interference, intentional infliction of emotional distress, and slander. Cram Roofing has reason to believe that your company may be liable for damages sustained by Cram Roofing as a result of your company's affiliation with Zamora and/or Parker. Cram Roofing will seek to recover all profits obtained by your company as a result of Zamora and/or Parker's illegal activities. Further, Cram Roofing will seek to recover all damages it has incurred in the loss of contracts, which loss has been the direct result of Zamora and Parker's breach of the Agreement, tortious interference, and civil conspiracy.

This letter is to serve as formal written notice of Cram Roofing's intent to file a lawsuit and include your company as a named defendant unless I hear from you within ten (10) days.

Shortly thereafter, Parker filed suit against Cram Roofing and Gary Cram. The basis for Parker's libel claim was the August 25 letter, specifically, the statement that Parker had "voluntarily terminated" his employment with Cram Roofing and the accusation that he had engaged in "illegal activities." The jury found Cram Roofing had libeled Parker. In accordance with the jury's verdict, the trial court rendered judgment in Parker's favor.

### STATUTE OF LIMITATIONS

■ Cram Roofing contends Parker's libel claim is barred by the one-year statute of limitations governing libel claims. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.002(a) (Vernon 2002) (specifying one-year limitations period for suits alleging defamation). Parker responds that his libel claim was fully outlined in his Second Amended Original Petition, which was timely filed less than a year after the August 25 letter was sent. He further contends that even if his Second Amended Original Petition is not deemed sufficient to allege a libel claim, his Third Amended Original Petition specifically alleged libel, and though filed more than a year after the August 25 letter was published, it relates back to his earlier petitions and thus is not barred by limitations.

■ Parker's "relation back" claim is based upon section 16.068 of the Civil Practice and Remedies Code, which provides:

If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement

to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.068 (Vernon 1997). A two-pronged test exists to determine whether an amended pleading relates back to an earlier pleading. *Id.; see Leonard v. Texaco,* 422 S.W.2d 160, 163 (Tex.1967) (interpreting the predecessor statute to section 16.068). First, the original cause of action asserted in the first pleading must have been timely filed; and second, the amended pleading which alleges new facts or grounds of liability or defense must not be wholly based on a new, different, or distinct transaction or occurrence. TEX. CIV. PRAC. & REM.CODE ANN. § 16.068; *see Cooke v. Maxam Tool & Supply, Inc.,* 854 S.W.2d 136, 141 (Tex. App.-Houston [14th Dist.] 1993, writ denied). Thus, even if the amended petition contains new causes of action, "the new causes [of action] are not barred by the statute of limitations unless they arise from a wholly different transaction." *Stevenson v. Koutzarov,* 795 S.W.2d 313, 319 (Tex.App.-Houston [1st Dist.] 1990, writ denied).

Even a cursory review of Parker's timely-filed Second Amended Original Petition and his later-filed Third Amended Original Petition leads to the conclusion that the libel cause of action specifically alleged in the Third Amended Petition does not arise from a wholly different transaction. Parker's Second Amended Original Petition recites the facts surrounding his employment with Cram Roofing, his on-the-job injury, the closing of the Valley office, his dismissal from employment, his attempt at establishing a new business with his co-worker, and the dissemination of Cram's August 25 letter. The letter, described as "knowingly false, malicious and unlawful,"

is attached as Exhibit A to the petition. The petition also alleges that as a result of Cram's letter, Parker has lost business and profits, and has suffered embarrassment, frustration, anxiety, and anguish. Finally, three causes of action are specified: violation of the Texas Workers' Compensation Act; rescission of the covenant not to compete; and tortious interference with contract.

The Third Amended Original Petition contains the identical allegations regarding facts, damages, and causes of action. However, the petition contains an additional paragraph specifically setting forth a claim for statutory libel and libel per se. The new paragraph states in its entirety:

> Plaintiff incorporates all of the fact provisions set forth above and states that the attached Exhibit "A" violates Tex. Civ. Prac. & Remedies Code § 73.001 regarding statutory libel and is libel per se. As a direct and proximate result of the letter Plaintiff has been damaged for which he now sues.

The libel cause of action is clearly based upon the facts and circumstances previously alleged. No new transaction or facts are introduced in the Third Amended Petition that were not alleged in the earlier petition. Since the original causes of action were timely filed, and since the libel claim is not "wholly based on a new, distinct or different transaction or occurrence," the Third Amended Petition relates back to the earlier timely-filed Second Amended Original Petition. *See Lathem v. Richey,* 772 S.W.2d 249, 255 (Tex.App.-Dallas 1989, writ denied). Cram's first issue is overruled.

### "VOLUNTARILY TERMINATED"

■ Cram Roofing argues that the statement in its August 25 letter that Par-

ker was "voluntarily terminated" is not, as a matter of law, defamatory. We agree.

■ A statement is defamatory if it "tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon 1997). Whether the words used are capable of a defamatory meaning is a question of law. *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654 (Tex. 1987). The allegedly libelous statements must be construed "as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement." *Id.* at 655.

To "voluntarily terminate" or quit one's employment "means 'to give up employment,' 'stop working,' or to 'leave.'" *San Antonio Express News v. Dracos*, 922 S.W.2d 242, 248 (Tex.App.-San Antonio 1996, no writ) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1867 (1981)). We hold that the statement that Parker had quit his employment with Cram Roofing, when construed in light of the remainder of the August 25 letter and the surrounding circumstances, did not "tend[ ] to injure [Parker's] reputation and thereby expose [him] to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." *See id.* (holding that statement that plaintiff "quit" was not defamatory).

#### "ILLEGAL ACTIVITIES"

■ Cram Roofing also argues its statement that Parker had engaged in "illegal activities" is substantially true. Truth is a defense to a libel action. TEX. CIV. PRAC. & REM.CODE ANN. § 73.005 (Vernon 1997). The statement need not be true in every detail; substantial truth is sufficient to establish the defense. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15–16 (Tex. 1990). Under the "substantial truth" test, the statement in question is examined in its entirety to determine whether the "gist" of the statement is substantially true. *Id.* at 16. In making this evaluation, the question is whether, in the mind of the average person who heard or read the statement, the statement was more damaging to the plaintiff's reputation than a truthful statement would have been. *Id.* If the underlying facts regarding the "gist" of the statement are undisputed, then substantial truth can be determined as a matter of law. *Id.* Obviously, if the underlying facts are disputed, then a fact issue arises. The affirmative defense of substantial truth is a complete defense, and the burden is on the defendant—here, Cram Roofing—to prove the truth or substantial truth of the allegedly defamatory statement. *Tatum v. Liner*, 749 S.W.2d 251, 256 (Tex.App.-San Antonio 1988, no writ).

Cram Roofing contends we should set aside the jury verdict because the alleged libelous statement at issue in this case is substantially true as a matter of law. Relying on *McIlvain*, Cram argues that "[b]ecause the underlying facts (use of the phrase 'illegal activities') is undisputed, the Court 'can disregard any variance with respect to items of secondary importance and determine substantial truth as a matter of law.'" Cram's argument misses the mark for two reasons. First, *McIlvain* does not support Cram's argument that there is no fact issue merely because the parties do not dispute what words were contained in Cram Roofing's letter. *McIlvain* provides that substantial truth can be determined as matter of law "if the underlying facts *as to the gist of the defamatory charge* are undisputed." *McIlvain*, 794 S.W.2d at 16 (emphasis added). When the

gist of the defamatory statement—that is, the essential meaning of the statement—is subject to differing interpretations, a fact question arises. *See Scripps Tex. Newspapers, L.P. v. Belalcazar,* 99 S.W.3d 829, 836 (Tex.App.-Corpus Christi 2003, pet. denied) (holding fact issues precluded summary judgment on substantial truth defense); *Entravision Communications Corp. v. Belalcazar,* 99 S.W.3d 393, 398 (Tex.App.-Corpus Christi 2003, pet. denied) (same); *TSM AM–FM TV v. Meca Homes, Inc.,* 969 S.W.2d 448, 452 (Tex. App.-El Paso 1998, pet. denied) (holding summary judgment evidence failed to establish the truth or substantial truth of the statements as a matter of law). Here, the trial court determined that a fact issue was presented and submitted an issue to the jury. We review the jury's determination deferentially.

■ Cram also argues that the determination of substantial truth is an issue of law because, as the dissent contends, a contract has the force of law and violation of a contract is thus "illegal." While a contract may indeed have the force of law, breach of a contract is not necessarily an illegal activity. It is a civil breach of an obligation imposed by the contract. Further, the alleged breach of the noncompetition agreement in this case did not result in automatic remedies or penalties. At most the alleged breach vested Cram Roofing with a claim for breach of contract, with the potential to obtain remedial awards from a court after successful presentation of the breach of contract claim.

Ultimately, the question here is whether Cram's statement that Parker had engaged in "illegal activities" is capable of defamatory meaning, and if so, whether it is substantially true. We review these issues deferentially, giving due regard to the trial court's determination that Cram's statement was sufficiently ambiguous or questionable such that a jury question arose. *See Carr v. Brasher,* 776 S.W.2d 567, 570 (Tex.1989); *Gray v. HEB Food Store No. 4,* 941 S.W.2d 327, 329 (Tex. App.-Corpus Christi 1997, writ denied) (holding that when language is ambiguous the factfinder should be entitled to determine the statement's meaning and its effect on ordinary listener).

■ Parker argues "illegal activities" "implies to the average reader a violation of penal law." In support of this contention he points to the testimony of at least two witnesses that "illegal activities" implied criminal conduct. Gary Cram admitted that he might consider it an insult to his reputation if he were accused of engaging in "illegal activities." He also admitted that when the word "illegal" is used, he thinks, at least some of the time, of criminal conduct. Finally, Cram agreed that Parker "did not do anything criminal" to Cram.

Hugh Batchelder, a retired contractor, testified that if he received a letter about a contractor such as the one sent out about Parker, the reference to "illegal activities" would make him nervous and make him "want to stay away from that individual." In fact, when asked what the term "illegal activities" as used in the letter at issue meant to him, Batchelder responded, "Well, nowadays time, I think he would either be a dope peddler or a gun runner."

It is of little consequence that the term "illegal activities" was preceded by a listing of numerous civil causes of action. Neither Batchelder nor Cram, both of whom are experienced businessmen, had a clear understanding of what any of those causes of actions were. Further, although Cram's attorney understood that the term "illegal activities" was meant to refer only to civil actions, the test is not what Cram's attorneys intended or understood. The test is whether in the mind of an average

person reading this statement, the statement accused Parker of engaging in criminal illegal activity.

No doubt the jury considered the testimony of these two witnesses when it read in the court's charge that "it is sufficient to establish libel if in reading the statement an ordinary person would draw a reasonable conclusion that [Parker] was charged with a violation of some criminal law." The jury had ample evidence before it from which to conclude that an ordinary person would believe that the reference to "illegal activities" meant criminal activities. Having determined that on this record the jury could reasonably have found that the gist of the phrase "illegal activities" meant criminal activities, the evidence further supports the jury's implied finding that the gist of the statement that Parker had engaged in "illegal activities" was not substantially true.

█ Guided by the trial court's instructions and definitions, and in light of testimony from witnesses that "illegal activities" conjures up for them thoughts of criminal violations, the jury could properly determine, as it did, that Cram libeled Parker and that the gist of Cram's statement was not substantially true. We are not at liberty to substitute our judgment for that of the jury. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex.1986). Cram's third issue is overruled.

## VALIDITY OF NON COMPETE AGREEMENT

█ In its fourth issue Cram Roofing claims the trial court erred in failing to allow Cram to explain to the jury that the court had previously determined that the non-competition agreement was valid and enforceable. Just prior to closing arguments, the trial judge issued a verbal ruling denying Parker's motion to declare the non-competition agreement invalid, stating she thought the agreement was valid.

Cram does not point to any place in the record where its attorneys then attempted to inform the jury of the trial court's ruling, nor is there any readily apparent offer of proof by Cram. It is not this court's burden to scour the record for alleged harm. *See* TEX.R.APP. P. 38.1(h); *Palmer v. Espey Huston & Assocs., Inc.*, 84 S.W.3d 345, 351 (Tex.App.-Corpus Christi 2002, pet. denied).

█ Further, even if there were an offer of proof that was denied by the court, no harmful error would arise. Cram Roofing presented testimony and documentary evidence about earlier proceedings in both Hidalgo County and Bexar County in which the non-competition agreement was enforced. Further, Cram Roofing was allowed to inform the jury of prior rulings on the non-competition agreement during closing arguments when counsel stated that Cram Roofing had a "valid, legal right to try to enforce [the non-competition] agreement. And that valid, legal right was supported by two different courts in two separate counties in this state." Counsel further argued that Cram believed he had a valid non-competition agreement, and that "[t]wo separate courts and two separate counties in this state affirmed how he felt...." Under the circumstances, harmful error cannot be established. Cram Roofing's fourth issue is overruled.

## MENTAL ANGUISH DAMAGES

█ Cram Roofing challenges the legal sufficiency of the evidence supporting the jury's award of $50,000 for mental anguish damages. We review a no evidence challenge under a well-established standard. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983); *Hickey v. Couchman*, 797 S.W.2d 103, 109 (Tex.App.-Corpus Christi 1990, writ denied).

To recover damages for mental anguish there must be " 'direct evidence of the nature, duration, and severity of their mental anguish' " or other evidence that the plaintiff suffered a " 'high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment,' " anger, or, alternatively, an event beyond the vicissitudes of daily life. *Gunn Infiniti, Inc. v. O'Byrne,* 996 S.W.2d 854, 860 (Tex.1999) (quoting *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex. 1995)).

The record establishes that following the dissemination of Cram's letters, Parker was distraught and very upset. He became depressed, angry, and suicidal. His wife of fifteen years became so concerned that she hid medication out of fear that he would try to overdose on prescribed medicines. His family described him as a changed man who no longer was easy going and jovial. Rather now he "just snaps." Economically Parker was devastated and had to cash in life insurance policies to pay bills and endure the humiliation of not timely paying bills. Based on our review of the record, we cannot say that Parker failed to prove mental anguish damages. Cram's fifth issue is overruled.

The judgment of the trial court is affirmed.

Dissenting opinion issued August 29, 2003 by: SARAH B. DUNCAN, Justice, joined by PAUL W. GREEN, Justice and KAREN ANGELINI, Justice.

Dissenting opinion by SARAH B. DUNCAN, Justice, joined by PAUL W. GREEN, Justice, and KAREN ANGELINI, Justice.

I respectfully dissent. I would hold that the statement that Parker engaged in "illegal activities" is substantially true as a matter of law, reverse the trial court's judgment, and render judgment in Cram Roofing's favor.

An activity is "illegal" if it is "contrary to or violating a law or rule or regulation or something else (as an established custom) having the force of law." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1126 (1981). A contract of course has the force of law. Therefore, Parker engaged in illegal activity if he violated his non-competition agreement. Since the evidence conclusively establishes that Parker violated his non-competition agreement,[1] I would hold that the statement that Parker engaged in "illegal activities" is substantially true as a matter of law, reverse the trial court's judgment, and render judgment in Cram Roofing's favor.

---

1. Parker's non-competition agreement prohibited him, "in any capacity (including without limitation, as an employee, consultant, principal, lender, investor, advisor, representative, or agent)" from "compet[ing] with Cram Roofing in the Business" of "repairing and improving existing roofs and building new roofs" "within a one-hundred (100) mile radius of Cram Roofing's McAllen office or Cram Roofing's central office"; the trial court found the non-competition agreement was valid and enforceable at the time Cram published its letters; Parker's and Zamora's company, South Texas Pinnacle Roofing, Inc., as well as Zamora and "all persons or entities acting on their behalf," were enjoined "from engaging in the roofing business within a 100 mile radius of Cram Roofing Company, Inc.'s Pharr, Texas branch office and its San Antonio, Texas principal office"; and the injunction forced Parker to "shut down" his work on the LaJolla Performing Arts Center.