

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00275-CV

_____

RICHARD A. WEBER, ERIC ELAM, AND JOE PALMER, Appellants

V.

FRANK FERNANDEZ, Appellee

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-299878-18

Dissenting and Concurring Memorandum Opinion by Justice Gabriel

**DISSENTING AND CONCURRING MEMORANDUM OPINION**

Once again, the specter of the Texas Citizens Participation Act (TCPA) has materialized, causing this court to engage in the delicate, burden-shifting dance as imposed by the TCPA itself and as interpreted by the supreme court. In this instance, we are asked to determine if clear and specific evidence established a prima facie case that the challenged communications were false and made with actual malice— essential elements of a defamation claim brought by a public figure. Contrary to the majority, I believe that the public figure in this case met his burden to provide the requisite quantum and quality of evidence to establish a prima facie case of these elements regarding some of the alleged communications.

## I. CONCURRENCE

There is much that I agree with in the majority's opinion. I agree that appellee Frank Fernandez was a public figure for the purposes of this action. *See Scruggs v. City of Bowie*, No. 7:14-cv-00123-O, 2015 WL 13450692, at \*3–5 (N.D. Tex. Dec. 17, 2015) (applying TCPA). Therefore, I agree that appellants Richard A. Weber, Eric Elam, and Joe Palmer established the applicability of the TCPA by providing a preponderance of the evidence that their published communications regarding Fernandez related to their First Amendment rights on a matter of public concern. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7)(D).

I agree that Fernandez produced clear and specific evidence that Appellants' communications that he was a convicted robber or committed robbery were false and,

2

thus, defamatory. *See Minett v. Snowden*, No. 05-18-00003-CV, 2018 WL 2929339, at *9 (Tex. App.—Dallas June 12, 2018, pets. denied) (mem. op.); *cf. Adi v. Prudential Prop. & Cas. Ins. Co.*, No. 14-01-01001-CV, 2003 WL 22908129, at *1, *4–5 (Tex. App.— Houston [14th Dist.] Dec. 11, 2003, pet. denied) (mem. op.) (concluding communication that Adi had been arrested for third-degree felony of insurance fraud, but actual arrest had been for second-degree felony of organized criminal activity, was "not . . . more damaging to Adi's reputation, in the mind of the average reader," and was therefore substantially true). I agree that the gist of Palmer's communications that Fernandez alleged "implied" he was involved in corruption and a "cover-up" was not directed at Fernandez. *See Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 863 (Tex. App.—Houston [14th Dist.] 2017, no pet.). I agree that Fernandez failed to establish a prima facie case that Palmer's communications describing Fernandez as a "known thief" who "stole from somebody" and stating Fernandez lied to get petition signatures were false. *See Adi*, 2003 WL 22908129, at *5; *Dolcefino v. Randolph*, 19 S.W.3d 906, 923 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (op. on reh'g). And I agree that Fernandez's claim for intentional infliction of emotional distress (IIED) survived Appellants' TCPA motion.[1] With these conclusions, I concur.

---

[1]I do believe, however, that to the extent Fernandez's IIED claim was based on the same communications giving rise to the defamation claim, it would necessarily have been included in Appellants' TCPA dismissal arguments. *Cf. Ghrist v. MBH Real Estate LLC*, No. 02-17-00411-CV, 2018 WL 3060331, at *5 & n.9 (Tex. App.—Fort

## II.  DISSENT

### A.  CONVICTED CRIMINAL

But I respectfully cannot agree with the majority's conclusion that Appellants' convicted-criminal communications were substantially true.  As discussed by the majority, because many of the challenged communications involved the accusation of a crime, they were defamatory per se; thus, Fernandez had no burden to establish the second defamation element—the communication was defamatory concerning him. *See Van Der Linden v. Khan*, 535 S.W.3d 179, 198 (Tex. App.—Fort Worth 2017, pet. denied).  But Fernandez, as a public figure, did have the burden to establish that Appellants published a false statement of fact to a third party.[2]  *See id.*  Here, it appears only the falsity of Appellants' convicted-criminal communications is seriously disputed.  To that end, the specific facts underlying Fernandez's criminal charges and the applicable terms are important.

---

Worth June 21, 2018, no pet.) (mem. op.) (concluding plaintiff's claims that "do not involve alleged communications," e.g., conversion, civil conspiracy, and DTPA violations, survived TCPA dismissal motion because claims were factually predicated on conduct).

[2]Because Fernandez was a public figure for the purposes of his claims, he had the burden to establish a prima facie case of falsity by clear and specific evidence.  *See Van Der Linden*, 535 S.W.3d at 198–99; *Vice v. Kasprzak*, 318 S.W.3d 1, 17 n.9 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  In other words, Appellants had no burden to establish substantial truth.  Although the majority casts its discussion in terms of substantial truth instead of falsity, the test is essentially the same with the burden resting on Fernandez.  *Vice*, 318 S.W.3d at 17 n.9.

4

On May 12, 2017, Fernandez was charged in a misdemeanor information with the Class A offense of theft of a silver bar valued at $750 or more but less than $2,500. *See* Tex. Penal Code Ann. § 31.03(a), (e)(3). *See generally* Tex. Const. art. I, § 10 (requiring felonies to be charged by grand jury in an indictment); Tex. Code Crim. Proc. Ann. arts. 21.02–.22 (providing requirements for an information). On August 3, 2017, Fernandez pleaded guilty to the information and in exchange, the State recommended that Fernandez's guilt not be adjudicated, that he be placed on community supervision for 20 months, that he complete 200 hours of community-service restitution, and that he pay a $500 fine. *See* Tex. Code Crim. Proc. Ann. arts. 42.037(b)(3), 42A.102–.104. In its subsequent judgment, the trial court found that the submitted evidence substantiated Fernandez's guilt but that it was in society's best interest "to defer proceedings *without entering an adjudication of guilt* and to place [Fernandez] on community supervision." [Emphasis added.] *See id.* art. 42A.101. The trial court then placed Fernandez on community supervision for 20 months, as the parties agreed, and imposed community-supervision conditions. If Fernandez's community-supervision term expires or if the trial court ends his term early for best-interest reasons before any adjudication proceeding occurs, Fernandez will be entitled to a dismissal of the information and discharge as a defendant.[3] *See id.* art. 42A.111.

---

[3]Fernandez alleged that he "has faithfully adhered to the requirements of his [community supervision]," and Appellants have not disputed this. If Fernandez is discharged, he would be entitled to a nondisclosure order, sealing his criminal-history records. *See* Tex. Gov't Code Ann. §§ 411.0716(b), .072, .075.

The dismissal and discharge "may not be considered a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense." *Id.* art. 42A.111(c). In short, even though Fernandez pleaded guilty, he has not been found guilty and there is no conviction. *See Donovan v. State*, 68 S.W.3d 633, 636 (Tex. Crim. App. 2002).[4]

Relying on federal district court opinions from Texas, Tennessee, and Virginia, the majority concludes that Fernandez's guilty plea is sufficient to refute his assertions of falsity because the convicted-criminal communications carried no greater "sting" than did Fernandez's own guilty plea. In other words, close enough is good enough to refute falsity regarding the imputation of crime in the TCPA context.[5] With all due

---

[4]*Donovan* is clear that a defendant placed on community supervision with no guilt adjudication is not a convicted criminal:

> Under the deferred adjudication scheme, a judge does not make a "finding of guilt"; instead the judge makes a finding that the evidence "substantiates the defendant's guilt" and then defers the adjudication. Appellant argues that a finding that the evidence substantiates guilt *is* a finding of guilt. But this construction of Art. [42A.101(a)] is inconsistent with our holdings on the meaning of deferred adjudication. A deferred adjudication is often referred to as a deferral of a finding of guilt. Trial courts routinely say, upon adjudication, that they "find (the defendant) guilty." A defendant on deferred adjudication has not been found guilty. That is one of the signal benefits of deferred adjudication as opposed to, for instance, regular community supervision. When adjudication is deferred, there is no "finding or verdict of guilt."

68 S.W.3d at 636 (footnotes omitted).

[5]Regarding the robbery communications, Appellants made a similar argument in terms that reveal the danger of its application: "[The use of robbery versus theft] is

6

respect to these holdings, I disagree. And it appears the majority recognizes the distinction by holding that theft is not close enough to robbery, compelling its conclusion that the robbery communications were not substantially true. To my mind, the difference between theft and robbery as stated by the majority—the addition of the element of threatened or actual bodily injury—is a distinction that is as "technical" and steeped in legal esoterica as is the distinction found wanting by the majority regarding a convicted criminal and a defendant who has not had his guilt adjudicated by a court. Stated another way, if robbery and theft are different enough in the mind of the ordinary listener to be actionable, then convicted and not convicted are the same amount of different. Close enough is either good enough or it is not. I believe in the context of the imputation of a crime, it is not and is more than a mere "matter of degree" as characterized by the majority.[6]

---

a minor nuance, as the gist of the publication is that Fernandez was in fact charged and pled guilty of [sic] a crime." Surely not any crime will do. Even for defamation purposes, communicating that one pleaded guilty to aggravated sexual assault of a child cannot be close enough to the truth of an assault. The classification of criminal offenses is not a "minor nuance," and neither is referring to an unadjudicated defendant as a convicted criminal.

[6]In discussing this "matter of degree," the majority states, "[W]e are not dealing with a situation in which Appellants made statements that accused an innocent man of a crime he did not commit. Instead we must begin with the basic fact that Fernandez did confess to a crime." I respectfully contest the majority's apparent holding that if one confesses to committing misdemeanor theft but is not found guilty by a court, he is not entitled to the constitutional presumption of innocence of the felony offense of robbery. Close enough cannot overshadow constitutional protections. Fernandez has not been found guilty of any crime and is presumed innocent of an uncharged felony robbery.

7

The majority's logic supporting its holding that the robbery communications are actionable applies to the convicted-criminal communications. Whether one is charged with an offense or convicted of that offense carries different connotations— different stings—even to those of us who are "ordinary." *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 724 (Tex. 2016). *See generally* 1 Rights & Liabilities in Media Content § 6:16 (2d ed. 2018) ("Errors in legal terminology, however, may be actionable, and not protected under the substantial truth test, when the ordinary reasonable recipient would regard the plaintiff in lower esteem when the reported statement and the actual truth are compared. There is a world of difference, for example, between a report that accuses a person of a minor offense and a report that accuses a person of a serious felony involving fraud, deceit, or dishonesty."). At the very least and at this preliminary stage of the case, I would hold that Fernandez established a prima facie case, through clear and specific evidence, of the falsity of Appellants' convicted-criminal communications. *See Minett*, 2018 WL 2929339, at *3, *9 (holding public figure who pleaded not guilty to misdemeanor, was found guilty after bench trial, and received probated sentence established, under the TCPA, falsity of published communication that he had been arrested and incarcerated because communication was more damaging than truth would have been); *cf. Darby v. N.Y. Times Co.*, No. 07-12-00193-CV, 2014 WL 818614, at *1, *5–6 (Tex. App.—Amarillo Feb. 26, 2014, pet. denied) (plurality mem. op.) (in summary-judgment context, finding material fact issue on falsity of newspaper's statements that public-figure

8

plaintiff encouraged plot to bomb police cars and that mentioned specific crimes because of "mix of evidence" of plaintiff's involvement); *Cram Roofing Co. v. Parker*, 131 S.W.3d 84, 90–92 (Tex. App.—San Antonio 2003, no pet.) (en banc op. on reh'g) (holding statement that plaintiff had engaged in "illegal activities" would cause ordinary person to believe meaning was "criminal activities," supporting jury's verdict that gist was not substantially true).

The convicted-criminal and robbery communications include and combine two alleged levels of falsity: (1) that Fernandez was convicted and found guilty (2) of robbery, which the majority recognizes was false. Any review of these communications must consider them as a whole in light of the surrounding circumstances and not in isolation. *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000) (requiring defamatory nature of publication to be determined by construing it "as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it"). Here, the gist compounds their sting, further emphasizing their falsity. A conclusion that either of these communications, when taken in isolation, is close enough to true to refute falsity overlooks the fact that these communications must be read as a whole and could not help but affect the sensibility of an average person. It is much different, and stings worse, to be labeled a felon convicted of a crime classified as one against a person versus having a deferred guilt finding to a misdemeanor classified as a crime against property. To conclude that these communications taken in tandem were close

9

enough to the truth for purposes of the TCPA would potentially immunize those making false communications merely because they allege criminal conduct, thwarting the TCPA's stated intent to protect both the valid exercise of free-speech rights and the right to file meritorious lawsuits. Tex. Civ. Prac. & Rem. Code Ann. § 27.002; *see Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 853–54 (Tex. App.—Austin 2018, pet. filed) ("[T]he [TCPA] does not protect the *unfettered* constitutional rights of free speech and to petition but, rather, expressly protects those rights only '*to the maximum extent permitted by law*.'" (quoting section 27.002)).

For all of these reasons, I would conclude that Fernandez established a prima facie case of falsity at this preliminary stage of his suit and would continue to a discussion of Appellants' actual malice in communicating that Fernandez was a "convicted criminal." I disagree with the majority's failure to do either.[7]

## B. ACTUAL MALICE FOR ROBBERY COMMUNICATION

I additionally diverge from the majority's opinion that Fernandez did not proffer clear and specific evidence that Appellants acted with actual malice by communicating that he was a convicted robber or committed robbery.[8] Fernandez

---

[7]To that issue, Appellants admitted in their initial declarations, which were incorporated into their later "improved" declarations, that each had an awareness of possible differences applicable to deferred adjudication: "I am aware that there are some legal processes which treat 'deferred adjudication' similarly to 'convicted.'"

[8]Again, I agree with the majority that Fernandez established the falsity of the robbery communication for purposes of the TCPA. I follow the majority's lead in

10

was required to produce satisfactory evidence that Appellants had knowledge of, or a reckless disregard for, the falsity of these communications. *See Lane v. Phares*, 544 S.W.3d 881, 891 (Tex. App.—Fort Worth 2018, no pet.). Reckless disregard is subjective, focusing on the conduct and state of mind of Appellants, and may be established through circumstantial evidence. *See Campbell v. Clark*, 471 S.W.3d 615, 629 (Tex. App.—Dallas 2015, no pet.); *Fox Entm't Grp., Inc. v. Abdel-Hafiz*, 240 S.W.3d 524, 532 (Tex. App.—Fort Worth 2007, pet. denied) (op. on reh'g). This subjective state of mind is determined at the time the communications were made. *See Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 174 (Tex. 2003). But Appellants' self-serving declarations of sincerity, such as Elam's averment that his "error was unintentional," will not defeat an actual-malice showing. *See Campbell*, 471 S.W.3d at 629.

I would conclude that Fernandez met his burden to establish Appellants' actual malice in communicating that he committed or had been convicted of robbery. In his declaration, Palmer admitted that he knew Fernandez was accused of theft, not robbery, at the time of the challenged communications. Palmer further stated that he "only recently learned that the word 'robber' was inaccurate" but again stated that "[a]ll" of his comments "were directed to [Fernandez's] theft of the silver bar." In his motion to dismiss, Palmer recognized that using "robbery" was a mischaracterization.

---

separating this communication from its context, which includes the convicted-criminal communications.

*See generally* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a) (requiring court to consider pleadings and affidavits in determining TCPA dismissal motion). Elam and Weber did not address the robbery statements in their declarations, but Fernandez alleged that they posted in a public Facebook group that he was a "convicted robber" who had been "found guilty." Indeed, Elam stated in a public Facebook group that Fernandez "is a convicted criminal, he commite [sic] robbery while being a Kennedale city council member." Further, Weber was an administrator of the Facebook group that posted Palmer's video.

Although Appellants averred that converting theft to robbery was a "minor nuance," this self-serving label cannot defeat Fernandez's proof that Appellants purposefully avoided the truth based on their admitted knowledge that he had been charged with theft of the silver bar at the time they made the communications, not robbery. Merely because they took that knowledge and spun it into something more serious while protesting it was "unintentional" does not negate actual malice. *See Harte-Hanks Comm'cns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989) ("Although failure to investigate will not alone support a finding of actual malice, . . . the purposeful avoidance of the truth is in a different category."); *Campbell*, 471 S.W.3d at 631–32 ("[A]lthough Campbell testified by affidavit that he 'had no knowledge that anything in the releases was factually incorrect[,]' Campbell's 'self-serving protestations of sincerity' cannot solely defeat 'proof of actual malice.' . . . Given the seriousness of the allegations against Clark in the publications, appellants' 'inaction' in confirming Lacie

12

Adams's statements and the other allegations in the article and mailer likely may reflect a 'deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of [the] charges.'" (citations omitted)).

## C. CONSPIRACY AND IIED

The majority concludes that because each of Fernandez's defamation allegations is subject to dismissal under the TCPA, his conspiracy claim must also be dismissed.[9]  Part of his conspiracy claim would survive Appellants' TCPA dismissal motion based on my conclusion that not all of Fernandez's defamation allegations are subject to dismissal under the TCPA.  Similarly, to the extent Fernandez's IIED claim rests on the robbery and convicted-criminal communications, that would survive along with his IIED claim resting on Elam's alleged harassment.

## III.  SUMMARY

I agree that the trial court erred by denying Appellants' TCPA dismissal motion as to several of Fernandez's alleged communications and that the trial court should consider attorneys' fees and sanctions for the claims that were subject to dismissal. *See Van Der Linden*, 535 S.W.3d at 203.  I concur in these portions of the court's judgment.  But I cannot agree that as part of his prima facie case, Fernandez failed to establish falsity regarding the communication that he was a convicted criminal or that he failed to establish actual malice in the communications characterizing the

---

[9]It appears that Fernandez added the conspiracy claim to impute liability for each communication on each Appellant based on their status as joint administrators of the web forum where the challenged communications were published.

13

misdemeanor theft charge against Fernandez as robbery. Because I believe these communications were not subject to dismissal, his conspiracy claim and a larger portion of his IIED claim should survive. I respectfully dissent to these portions of the court's judgment.

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered: March 28, 2019