**YSLETA INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**Gustavo MONARREZ and Jose Rodriguez, Appellees.**

**No. 08–01–00217–CV.**

Court of Appeals of Texas, El Paso.

Sept. 26, 2002.

Rehearing Overruled Nov. 14, 2002.

Steven J. Blanco, Delgado, Acosta, Braden & Jones, P.C., El Paso, for appellant.

John P. Mobbs, El Paso, for appellees.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

This is an appeal from a jury verdict in favor of Appellees. For the reasons stated, we affirm.

## I. SUMMARY OF THE EVIDENCE

Appellees, Gustavo Monarrez ("Monarrez") and Jose Rodriguez ("Rodriguez"), were employed by Appellant, Ysleta Independent School District ("the District"), as mechanics in the District's transportation department. On Friday, March 26, 1999, Monarrez, Rodriguez, and several other employees went to a local VFW hall for drinks after work. Appellees had signed up to work on Saturday. Appellees decided to leave between 10:30 p.m. and 11:30 p.m. Rodriguez was not feeling well after consuming ten to twelve beers and thought he might be late the next morning. He asked Monarrez to punch his time card for him if he was late because their supervisor would get mad if he was tardy.

The next morning Monarrez punched Rodriguez' time card around 6:30 a.m. Rodriguez did not wake up until 9:30 a.m. and was not feeling well. He called Monarrez and told him he would not make it to work and asked him to punch him out. Rodriguez promised that they would talk to their supervisor on Monday and get the matter cleared up.

That Monday, Rodriguez reported to work, but Monarrez did not because his daughter was ill. Rodriguez decided to wait until Monarrez was present to talk to their supervisor, Mr. Romero. The following day, Rodriguez explained what had happened to Romero. Monarrez also spoke with Romero and apologized. Later that day, Appellees were given "counseling sheets," a form of discipline. On April 16, 1999, Appellees were suspended. On April 28, 1999, Appellees were terminated by letter, which listed the reasons for termination as immorality, insubordination, fraud, failure to comply with Board policies, and reasons constituting good cause.

After learning that at least six other female employees of the District were involved in similar incidents but received less severe discipline, Appellees filed suit alleging that their gender was a motivating factor in the District's decision to terminate them. Appellees specifically filed suit under Section 21.051 of the Texas Labor Code, which prohibits employment discrimination. The case was tried to a jury and at the close of Appellees' evidence, the District moved for directed verdict, which was denied. The District re-urged the motion at the close of all of the evidence and before the case was submitted to the jury, and the motion was again denied. The jury returned a verdict in favor of Appellees. The jury awarded Rodriguez lost past and future wages and employee benefits in the amount of $74,000 and mental anguish damages in the amount of $175,000.[1] The jury awarded Monarrez lost past and future wages and employee benefits in the amount of $49,500 and mental anguish damages in the amount of $175,000. In addition, the jury awarded $30,000 in attorneys' fees. The District

filed a Motion for New Trial and a Motion for Judgment Notwithstanding the Verdict. Both motions were denied by the trial court and judgment was entered in favor of Appellees. This appeal follows.

## II. DISCUSSION

Appellant presents four issues on appeal. Appellant essentially challenges the legal and factual sufficiency of the evidence: 1) to support a prima facie case that it violated the Texas Commission on Human Rights Act; 2) to prove that its legitimate, nondiscriminatory reasons for its actions were mere pretexts for discrimination; 3) to support the mental anguish damages; and 4) to support the attorneys' fees awarded. We begin with a discussion of the standard of review.

### A. Legal and Factual Insufficiency

In considering a "no evidence" legal insufficiency issue, we consider only the evidence and inferences that tend to support the jury's findings and disregard all evidence and inferences to the contrary. *See Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634–35 (Tex.1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Texas Tech Univ. Health Sciences Ctr. v. Apodaca*, 876 S.W.2d 402, 411–12 (Tex. App.-El Paso 1994, writ denied). If more than a scintilla of evidence supports the questioned finding, the "no evidence" issue fails. *See Tseo v. Midland Am. Bank* 893 S.W.2d 23, 25 (Tex.App.-El Paso 1994, writ denied); *Hallmark v. Hand*, 885 S.W.2d 471, 474 (Tex.App.-El Paso 1994, writ denied).

An "insufficient evidence" or factual insufficiency issue involves a finding that is so against the great weight and prepon-

---

1. We note that Appellant does not challenge the lost past and future wages and employee benefits awards on appeal.

derance of the evidence as to be manifestly wrong. The test for factual insufficiency issues is set forth in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). In reviewing an issue asserting that a finding is against the great weight and preponderance of the evidence, we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact, as well as evidence which tends to disprove its existence. It is for the jury to determine the weight to be given to the testimony and to resolve any conflicts in the evidence. *See Carrasco v. Goatcher*, 623 S.W.2d 769, 772 (Tex.App.-El Paso 1981, no writ). The jury's finding should be sustained if there is some probative evidence to support it and provided it is not against the great weight and preponderance of the evidence. *See id.* Thus, we cannot substitute our judgment for that of the fact finder even if we find a fact contrary to that found by the jury. If, however, the verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the issue should be sustained.

## B. Texas Commission on Human Rights Act

Appellees sued under the Texas Commission on Human Rights Act ("TCHRA"), which prohibits discrimination in employment based on the basis of race, color, disability, religion, sex, national origin, or age. *Dillard Dept. Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 406 (Tex.App.-El Paso 2002, pet. denied); *see also*, TEX. LAB.CODE ANN. §§ 21.001, 21.051 (Vernon Supp.2002). The TCHRA is modeled after federal civil rights law. *NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). One express purpose of the TCHRA is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments. TEX. LAB.CODE ANN. §§ 21.001(1)

(Vernon Supp.2002). The TCHRA purports to correlate "state law with federal law in the area of discrimination in employment." *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex.1991). Thus, in light of the legislature's express purpose, we look to analogous federal precedent for guidance when interpreting the Texas Act. *Rennels*, 994 S.W.2d at 144.

Section 21.051 of the Texas Labor Code defines the types of employment discrimination the TCHRA was designed to suppress. Section 21.051 provides:

> An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEX. LAB.CODE ANN. § 21.051 (Vernon 2002).

In Issue No. One, Appellant challenges the legal and factual sufficiency of the evidence to support a prima facie case that it violated the Texas Commission on Human Rights Act. Specifically, Appellant argues that Appellees failed to present any evidence that they are members of a protected class and that they were either replaced by female employees or that similarly situated female employees were treated more favorably.

■ Appellant urges this Court to adopt the *McDonnell Douglas* burden-

shifting scheme. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that framework, a three step process is implemented in which: (1) the plaintiff proves his prima facie case by a preponderance of the evidence; (2) the defendant rebuts the presumption of intentional discrimination arising from the prima facie case by articulating legitimate, non-discriminatory reasons for the challenged action; and (3) the plaintiff counters by offering evidence that the legitimate, nondiscriminatory reasons are really a pretext for discrimination. *Casarez v. Burlington Northern/Santa Fe Co.*, 193 F.3d 334, 337 (5th Cir.1999) (footnote and citations omitted). However, when a case has been fully tried on its merits, as here, we do not focus on the burden shifting scheme described above. *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 402–03 (5th Cir.2000); *Rutherford v. Harris County, Tex.* 197 F.3d 173, 180 (5th Cir. 1999); *Coastal Mart, Inc. v. Hernandez*, 76 S.W.3d 691 (Tex.App.-Corpus Christi 2002, pet. dism'd by agr.); *Wal–Mart Stores, Inc. v. Canchola*, 64 S.W.3d 524, 536–37 (Tex.App.-Corpus Christi) 2001, Tex.R.App. P. 53.7(f) motion filed; *but see, Cox & Smith Inc. v. Cook*, 974 S.W.2d 217, 223 (Tex.App.-San Antonio 1998, pet. denied) (applying the *McDonnell Douglas* burden-shifting scheme to cases tried on the merits); *Austin State Hosp. v. Kitchen*, 903 S.W.2d 83, 90–91 (Tex.App.-Austin 1995, no writ) (applying the *McDonnell Douglas* burden-shifting scheme to cases tried on the merits). Once the case has been submitted to the jury, "the adequacy of a party's showing at any particular stage of the *McDonnell Douglas* ritual is unimportant." *Travis v. Bd. of Regents of the Univ. of Texas Sys.*, 122 F.3d 259, 263 (5th Cir.1997) (quoting *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 118 (5th Cir.1993)). We need not parse the evidence into discrete segments. *Rubinstein,* 218 F.3d at 402. "Instead, we inquire whether the record contains sufficient evidence to support the jury's ultimate findings." *Smith v. Berry Co.*, 165 F.3d 390, 394 (5th Cir.1999) (citations omitted).

In a TCHRA case, the employee is not required to prove that his gender was the sole reason or even a substantial reason for the employment action. *Quantum Chemical Corp. v. Toennies,* 47 S.W.3d 473, 480 (Tex.2001). The employee only needs to show that his gender was a motivating factor in the employer's decision. *Id.* If the employee's gender was a factor in the decision, illegal discrimination occurs. *Id.*

■ The District first argues that the evidence does not support the verdict because Appellees did not establish that they were members of a protected class, i.e., they did not prove they were men. Antonio Romero, the District's coordinator for transportation, testified that all of the mechanics were male. Likewise, when asked whether the mechanics were male, Rodriguez responded, "We're all men." When questioned about the complaint he filed with the Equal Employment Opportunity Commission, Rodriguez testified that the EEOC's investigation concluded that "[a]ll the women were doing it and we were the first two males that did it." Appellees both stated that they were married and testified about their wives. Rodriguez' wife, Lidia Armendariz, was also a witness in the case. In addition, Appellees were repeatedly referred to as "Mr. Rodriguez" and "Mr. Monarrez" throughout the trial and the termination letters from the District were addressed in the same manner. In considering only the evidence and inferences that tend to support the jury's findings, we find more than a scintilla of evidence to support the finding that Appellees are men. Likewise, after carefully

reviewing the entire record, we find there is some probative evidence to support the finding that Appellees are male and that the finding is not against the great weight and preponderance of the evidence. This portion of Issue No. One is overruled.

■ The District next argues that Appellees failed to present any evidence that they were either replaced by female employees or that similarly situated female employees were treated more favorably.[2] The evidence established that female employees of the District's transportation department frequently clocked in their co-workers and that those employees were not always disciplined for doing so. Romero testified that there was a problem with clocking-in in the transportation department, not with the male mechanics, but with the female bus drivers and attendants. He admitted that not one male had received any written reprimand for clocking-in violations prior to Appellees' terminations. Romero also admitted that Appellees had violated the same policy that the female employees violated and that those females were all still employed by the District.

Rodriguez testified that female employees did the same thing he did, yet those female employees were not fired. Armendariz, who is also an employee of the District, testified that in some instances, the females were not even disciplined for clocking-in other employees. While she received a reprimand for punching another female employee's card, the employee whose card she punched did not receive a reprimand.

Another female employee of the transportation department, Celia Aguilar, testified that she clocked-in for other employ-ees in the presence of her coordinator, Jerry Venable. Aguilar testified that she was not told that clocking-in for other employees was a violation of the District policy, nor was she reprimanded for doing so. She also stated that she witnessed female employees on more than one occasion clock-in for others and that none of those female employees were terminated or suspended.

Also, Ofelia Gallegos, another employee of the transportation department, frequently clocked-in for her daughter, Minerva Ortega. In some instances, Gallegos clocked-in for Ortega when Ortega was not yet present for work. Armendariz testified that it was common knowledge in the transportation department that Gallegos clocked in for her daughter.

The jury was charged that they could "infer that the employer committed an unlawful employment practice from evidence that the employer discharged the plaintiffs for violating work rules and regulations but did not discharge similarly-situated individuals of a different gender who violated the same work rules and regulations." In considering only the evidence and inferences that tend to support the jury's findings, we find more than a scintilla of evidence to support the finding that Appellees' gender was a motivating factor in the District's termination. This portion of Issue No. One is overruled.

After carefully reviewing the entire record, we find there is some probative evidence to support the finding that Appellees' gender was a motivating factor in the District's termination and that the finding is not against the great weight and pre-

---

**2.** Appellees note that the evidence which demonstrates they were treated differently from female employees who violated the same rule is relevant to both the prima facie case portion of the *McDonnell Douglas* analysis and the ultimate question of whether their gender was a motivating factor in the District's termination.

ponderance of the evidence. Issue No. One is overruled in its entirety.[3]

### C. Mental Anguish Award

■ In Issue No. Three, Appellant alleges that the trial court erred in denying its Motion for Judgment Notwithstanding the Verdict and its Motion for New Trial on the issue of mental anguish damages because the evidence is legally and factually insufficient to support the jury's award. In addressing mental anguish damages we are guided by the Texas Supreme Court's decision in *Saenz v. Fidelity and Guar. Ins. Underwriters*, 925 S.W.2d 607 (Tex. 1996) and our own opinion in *Worsham Steel Co. v. Arias*, 831 S.W.2d 81 (Tex. App.-El Paso 1992, no writ). Mental anguish has been defined in such a way as to imply:

> [A] relatively high degree of mental pain and distress; it is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these, and it includes mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

*Worsham Steel*, 831 S.W.2d at 85–86 (citing *Trevino v. Southwestern Bell Tel. Co.*, 582 S.W.2d 582, 584 (Tex. Civ. App.-Corpus Christi 1979, no writ)).

In *Saenz v. Fidelity and Guaranty Insurance Underwriters*, the Supreme Court reaffirmed *Parkway Co. v. Woodruff*, 901 S.W.2d 434 (Tex.1995), and found that mental anguish damages could not be awarded without either "direct evidence of the nature, duration, or severity of [plaintiffs'] anguish, thus establishing a substantial disruption in the plaintiffs' daily routine," or other evidence of " 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.' " *Saenz*, 925 S.W.2d at 614 (citing *Parkway*, 901 S.W.2d at 444). Not only must there be evidence of the existence of compensable mental anguish, there must also be some evidence to justify the amount awarded. *Saenz*, 925 S.W.2d at 614.

While there was no evidence of duration, we find there was more than a scintilla of evidence on the severity of Appellees' anguish. Rodriguez testified that after he was terminated, he was very depressed. He got upset with his wife and children and he would not talk to them. Rodriguez stated that he was under pressure and was scared. He stated that the job with the District was the only one he had ever had and he did not know where to start looking for another one. Rodriguez could not sleep and could not be with his wife. He was short-tempered and always upset. As a result of the termination, he lost his children's health insurance and they almost lost their house. Rodriguez was forced to sell a piece of property to pay bills. He also had to borrow money and food from family members. Armendariz testified that Rodriguez would not eat, would not communicate, and stopped going out with the family.

Monarrez testified that after he was terminated, his behavior changed and that his relationship with his wife was affected. He felt terrible. He became more aggressive with his children and he almost got divorced. Monarrez testified that he became sick of his nerves and was prescribed medicine to help him sleep. He also had

---

**3.** Because we find that the evidence supports the jury's ultimate finding, that Appellees' gender was a motivating factor in the District's termination, we need not address Issue No. Two, which challenges legal and factual sufficiency of the evidence to prove that its legitimate, nondiscriminatory reasons for its actions were mere pretexts for discrimination.

to borrow money from his family. Monarrez sold his two vehicles, which were his only means of transportation, and he cashed in his annuity.

In reviewing only the evidence and inferences that tends to support the jury's findings, we conclude that there was more than a scintilla of evidence for the jury to conclude that Appellees suffered compensable mental anguish. After carefully reviewing the entire record, we find there is some probative evidence to support the mental anguish awards and that the finding is not against the great weight and preponderance of the evidence. Issue No. Three is overruled in its entirety.

### D. Attorneys' Fees

■ In Issue No. Four, the District alleges that the trial court erred in denying its Motion for Judgment Notwithstanding the Verdict on the issue of attorneys' fees because the evidence is legally and factually insufficient to support the jury's award. Courts have uniformly held that any award of attorney's fees, pursuant to statute or under common law, is within the discretion of the trial court. Absent a showing of an abuse of discretion, the award or failure to award fees will not be disturbed on appeal. *See Amoco Production Co. v. Smith,* 946 S.W.2d 162, 165 (Tex.App.-El Paso 1997, no writ); *Simms v. Lakewood Village Property Owners Ass'n, Inc.,* 895 S.W.2d 779, 787 (Tex.App.-Corpus Christi 1995, no writ); *Houston Lighting & Power Co. v. Dickinson Indep. School Dist.,* 641 S.W.2d 302, 311 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Fowler v. Stone,* 600 S.W.2d 351, 353 (Tex.Civ.App.-Houston [14th Dist.] 1980, no writ); *Stegall v. Stegall,* 571 S.W.2d 564, 566 (Tex.App.-Fort Worth 1978, no writ).

Here, Appellees' attorney testified that three attorneys had participated in the case and that about 155 man-hours had been expended in preparing and trying the case. He testified that the usual and customary fee for attorneys in El Paso handling employment cases varied from $125 to $300 per hour depending on the experience of the attorney, the complexity of the case, and whether the attorney is board certified. He stated that they had recently tried two employment discrimination suits in federal court and were awarded $150 and $165 per hour, respectively. He testified that $125 per hour was a reasonable fee for this case, but based on the customary fee of attorneys, it was on the "lower end of the scale."

The jury was instructed on the factors relevant to measuring attorneys' fees and awarded $30,000. Based on the testimony elicited, the jury could have awarded fees in the range of $19,375 ($125 multiplied by 155 hours) to $46,500 ($300 multiplied by 155 hours). There was more than sufficient evidence to support the jury's award and the trial court did not abuse its discretion in entering judgment awarding the amount of fees found by the jury. Issue No. Four is overruled.

Having overruled each of Appellant's issues on review, we affirm the judgment of the trial court.