IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00362-CV

 

Linda Beaumont, Roni Beaumont Bellhouse,

AND
 BEAUMONT RANCH, L.L.C.

                                                                                Appellants

 v.

 

Tanya Basham,

                                                                                Appellee

 

 

 



From the 413th District Court

Johnson County, Texas

Trial Court No. C200200061

 



Opinion



 








          Tanya Basham filed suit against Linda
Beaumont, Roni Beaumont Bellhouse, and Beaumont Ranch, L.L.C., alleging causes
of action for defamation, invasion of privacy, theft, wrongful termination,
sexual harassment, and intentional infliction of emotional distress.  A jury
found in Basham’s favor on the defamation, invasion of privacy, and theft
claims and awarded her $260,000 in actual damages, $30,000 in additional/exemplary
damages, and $40,000 in attorney’s fees.  Appellants contend in ten issues that:

(1)  
     the court abused its
discretion by denying the Appellants’ special exceptions;

(2)  
     the court erred by
submitting a single question in the charge for multiple allegations of
defamatory statements;

 

(3)  
     there is no evidence or
factually insufficient evidence to support the award of damages for past and
future mental anguish;

 

(4)  
     there is no evidence to
support the award of damages for loss of reputation;

 

(5)  
     there is no evidence to
support the amount of damages awarded under the Texas Theft Liability Act;

 

(6)  
     the court erred by
awarding additional damages under the Theft Liability Act or, alternatively, by
awarding additional damages in excess of $1,000;

 

(7)  
     there is no evidence
that Beaumont committed an invasion of privacy and the court erroneously
permitted a double recovery for theft and invasion of privacy because Basham
suffered the same injury from the invasion of privacy as from the theft;

 

(8)  
     the court erred by committing
several errors which resulted in “cumulative harm” because the court allowed
“the case to be tried generally on the issue of whether or not Linda Beaumont
was a bad person”;

 

(9)  
     there is no evidence or
factually insufficient evidence to support the attorney’s fee award; and

 

(10)          
the court erred by the
manner in which it computed prejudgment interest.

 

We will affirm in part and reverse
and render in part.

Background

          Basham was the bookkeeper for the
Beaumont Ranch.  Because of financial difficulties at the Ranch, Linda Beaumont,
a co-owner of the Ranch, told Basham to give vendors false information about
when they would be paid.  After several months in an unpleasant work
environment, Basham gave two weeks’ notice.  About two weeks after Basham’s
departure, her nephew (and employee of the Ranch) Bryan Williams broke into her
house at Beaumont’s direction, looking for items belonging to the Ranch which Beaumont claimed Basham had stolen.  Williams apparently broke into Basham’s home on four
separate occasions, being accompanied on the last occasion by Roni Beaumont
Bellhouse, Beaumont’s daughter.

          Beaumont filed a report with the
Sheriff’s Department alleging that Basham had stolen one million dollars from
the Ranch.  An investigation was conducted, but no charges were ever brought
against Basham.

          Several witnesses testified about
various statements which were made around the community or to others by
telephone regarding alleged embezzlement by Basham and Basham’s alleged
involvement in a sexual relationship with a minor.

          The court granted Appellants’ motion
for directed verdict as to Basham’s claims for wrongful termination, and
intentional infliction of emotion distress.  The court also granted Basham’s
oral motion to dismiss her sexual harassment claim against the Ranch.

          The jury found that Beaumont had
slandered Basham but failed to find that Bellhouse had.  The jury found that
both Beaumont and Bellhouse had committed theft and invasion of privacy and had
acted with malice.  The jury awarded damages on the slander claim of $50,000
for loss of reputation, $100,000 for past mental anguish, and $25,000 for
future mental anguish.  The jury awarded damages on the theft claim of $25,000
against Beaumont and $10,000 against Bellhouse.  The jury awarded damages on
the invasion of privacy claim of $25,000 against Beaumont and $25,000 against
Bellhouse.  The jury awarded additional/exemplary damages against Beaumont of $10,000 for slander, $10,000 for theft, and $10,000 for invasion of privacy. 
The jury failed to find that Bellhouse should pay additional/exemplary damages. 
The jury awarded attorney’s fees of $40,000 on Basham’s theft claim.

Invasion of Privacy

          Appellants contend in their seventh
issue that (1) there is no evidence that Beaumont committed an invasion of
privacy and (2) the court erroneously permitted a double recovery for theft and
invasion of privacy because Basham suffered the same injury from the invasion
of privacy as from the theft. 

          When we conduct a no-evidence review,
we must determine “whether the evidence at trial would enable reasonable and
fair-minded people to reach the verdict under review.”  City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  We “must credit favorable evidence
if reasonable jurors could, and disregard contrary evidence unless reasonable
jurors could not.”  Id.

          The elements of a claim for
invasion of privacy are (1) the defendant intentionally intruded on the
plaintiff’s solitude, seclusion, or private affairs; and (2) the intrusion
would be highly offensive to a reasonable person.  See Valenzuela v. Aquino,
853 S.W.2d 512, 513 (Tex. 1993) (citing Restatement
(Second) of Torts § 652B (1977)); Russell v. Am. Real Estate Corp.,
89 S.W.3d 204, 212 (Tex. App.—Corpus Christi 2002, no pet.); see also Clayton
v. Wisener, 190 S.W.3d 685, 696 (Tex. App.—Tyler 2005, pet. denied).

          The jury found that Beaumont committed
an invasion of privacy and also engaged in a conspiracy to commit an invasion
of privacy.  Appellants do not challenge this conspiracy finding or the finding
the Bellhouse committed an invasion of privacy.

          “Once a conspiracy is proven, each
co-conspirator ‘is responsible for all acts done by any of the conspirators in
furtherance of the unlawful combination.’”  Carroll v. Timmers Chevrolet,
Inc., 592 S.W.2d 922, 926 (Tex. 1979) (quoting State v. Standard Oil Co.,
130 Tex. 313, 107 S.W.2d 550, 559 (1937)); accord Operation Rescue-Nat’l v.
Planned Parenthood of Houston & Se. Tex., 975 S.W.2d 546, 561 (Tex. 1998);
Goldstein v. Mortenson, 113 S.W.3d 769, 779 (Tex. App.—Austin 2003, no
pet.).  Thus, if Bellhouse is liable for an invasion of privacy, then Beaumont is liable as well.  See id.

          Appellants contend that they are not
liable for invasion of privacy because Basham suffered the same injury from the
invasion of privacy as from the theft.  We disagree.

          Under the “one satisfaction rule,” Texas law prohibits a “double recovery.”  See Crown Life Ins. Co. v. Casteel, 22
S.W.3d 378, 390 (Tex. 2000); Betts v. Reed, 165 S.W.3d 862, 873 (Tex. App.—Texarkana 2005, no pet.); Baribeau v. Gustafson, 107 S.W.3d 52, 60 (Tex. App.—San Antonio 2003, pet. denied).  “This rule applies when multiple defendants
commit the same act as well as when defendants commit technically different
acts that result in a single injury.”  Crown Life Ins., 22 S.W.3d at
390.  Here, Appellants contend the latter applies.

          Nevertheless, if a plaintiff pleads
alternate theories of liability, a judgment awarding damages on each alternate
theory may be upheld if the theories depend on separate and distinct injuries
and if separate and distinct damages findings are made as to each theory.  Baribeau,
107 S.W.3d at 60 (citing Birchfield v. Texarkana Mem’l Hosp., 747 S.W.2d
361, 367 (Tex. 1987)); Household Credit Servs., Inc. v. Driscol, 989
S.W.2d 72, 80 (Tex. App.—El Paso 1998, pet. denied); Borden, Inc. v. Guerra,
860 S.W.2d 515, 528 (Tex. App.—Corpus Christi 1993, writ dism’d by agr.).

          Here, Basham alleged that an invasion
of privacy was committed each time Williams and/or Bellhouse unlawfully entered
her home to search for property belonging to the Ranch.  The injuries Basham suffered
from these invasions of her privacy arose from these intrusions upon her “solitude,
seclusion, or private affairs.”  See Valenzuela, 853 S.W.2d at 513; Clayton,
190 S.W.3d at 696; Russell, 89 S.W.3d at 212; Restatement (Second) of Torts § 652B.

          Conversely, the injuries Basham
suffered because of the thefts of property from her home arose from the
“unlawful appropriations” of her property.  See Tex. Civ. Prac. & Rem. Code Ann. § 134.002(2) (Vernon 2005).

          The only element of damages addressed
in the court’s charge with respect to Basham’s invasion of privacy and theft
claims is mental anguish.  The court expressly instructed the jury in the
charge to not include in the award of damages for invasion of privacy “an
amount for mental anguish, if any, arising from theft.”  The court provided a
similar instruction with the damages question for Basham’s theft claim.

          Therefore, because Basham suffered separate
and distinct injuries from the invasions of privacy and from the thefts and
because the jury made separate and distinct damages findings as to each theory,
we hold that there was no double recovery.  See Baribeau, 107 S.W.3d at
61; Borden, 860 S.W.2d at 529.

          Accordingly, we overrule Appellants’
seventh issue.

Mental Anguish

          Appellants contend in their third
issue that there is no evidence or factually insufficient evidence to support
the jury’s award of $210,000 in damages for past and future mental anguish.

          .  .  .  [A]n award of mental anguish
damages will survive a legal sufficiency challenge when the plaintiffs have
introduced direct evidence of the nature, duration, and severity of their
mental anguish, thus establishing a substantial disruption in the plaintiffs’
daily routine.  Such evidence, whether in the form of the claimants’ own
testimony, that of third parties, or that of experts, is more likely to provide
the factfinder with adequate details to assess mental anguish claims.  Although
we stop short of requiring this type of evidence in all cases in which mental
anguish damages are sought, the absence of this type of evidence, particularly
when it can be readily supplied or procured by the plaintiff, justifies close
judicial scrutiny of other evidence offered on this element of damages. 

 

          When claimants fail to present direct
evidence of the nature, duration, or severity of their anguish, we apply
traditional “no evidence” standards to determine whether the record reveals any
evidence of “a high degree of mental pain and distress” that is “more than mere
worry, anxiety, vexation, embarrassment, or anger” to support any award of
damages.

 

 Parkway Co. v. Woodruff, 901 S.W.2d 434,
444 (Tex. 1995); accord Bentley v. Bunton, 94 S.W.3d 561, 606 (Tex. 2002).

          Not only must there be evidence of the
existence of compensable mental anguish, there must also be some evidence to
justify the amount awarded.  We disagree with the court of appeals that “[t]ranslating
mental anguish into dollars is necessarily an arbitrary process for which the
jury is given no guidelines.”  While the impossibility of any exact evaluation
of mental anguish requires that juries be given a measure of discretion in
finding damages, that discretion is limited.  Juries cannot simply pick a
number and put it in the blank.  They must find an amount that, in the standard
language of the jury charge, “would fairly and reasonably compensate” for the
loss.  Compensation can only be for mental anguish that causes “substantial
disruption in . . . daily routine” or “a high degree of mental pain and
distress.”  There must be evidence that the amount found is fair and reasonable
compensation, just as there must be evidence to support any other jury
finding.  Reasonable compensation is no easier to determine than reasonable
behavior—often it may be harder—but the law requires factfinders to determine
both.  And the law requires appellate courts to conduct a meaningful
evidentiary review of those determinations.   

 

Bentley,
94 S.W.3d at 606 (quoting Saenz v. Fid. & Guar. Ins. Underwriters, 925
S.W.2d 607, 614 (Tex. 1996)) (citations omitted).

          Here, the jury awarded Basham $100,000
in damages for past mental anguish on the defamation claim and $25,000 in
damages for future mental anguish on this claim.  The jury awarded Basham
$25,000 in mental anguish damages against Beaumont and $10,000 against Bellhouse
on the theft claim.  Finally, the jury awarded $25,000 in mental anguish damages
against Beaumont and $25,000 against Bellhouse on the invasion of privacy claim.

          Appellants concede that Basham is
entitled to at least “nominal damages” for the defamatory statements but argue
that there is no evidence or factually insufficient evidence “justifying more
than a nominal award.”  They also contend that the award lacks evidentiary
support because Basham failed to differentiate in her testimony among the
symptoms of mental anguish caused by the defamation, those caused by the theft,
and those caused by the invasion of privacy.

          Basham testified that, after she was
fired, she went to her son’s basketball game and sat by a friend, but her
friend “just got up and walked away.”  She noticed that “[e]verybody’s neck was
breaking to look at me.”  This caused her to feel “very humiliated and
embarrassed.”    Because of this, she left the bleachers and waited in the car
for the game to be over.  She experienced similar situations at other
basketball games and at her son’s baseball games.  There was “a lot of
whispering.”  She was “totally devastated” when Williams told her that Beaumont had told him to spread the rumors about her in town.

          Because of the embarrassment and
humiliation, Basham stopped going to town as much as possible.  She stopped
going to her children’s school functions, and she shopped for groceries in
another town.  She started having anxiety attacks on those occasions when she
did go to town, experiencing shortness of breath and an accelerated heart
rate.  She had “many” sleepless nights and continued to experience sleeping
problems up to the date of trial.  She thinks about it “[e]very minute of my
life.”  Basham testified that her “heart drops” whenever she hears a knock on
her door because she is “thinking what else is Ms. Beaumont going to do to me.”

          Basham ultimately moved to another
town because she “couldn’t take living there anymore.”  This caused separation
from her sons because they chose to stay with their father and remain in their
hometown.  Her oldest son moved back in with her about three years later.  Her
youngest son moved back in for about six months but ultimately returned to his
father’s home.  She is still “struggling” with the consequences of her decision
to move.

          Basham is no longer able to trust
people.  She feels “very uncomfortable” in social settings.  She has “basically
become isolated” and does not participate in social events held at her new
employer’s location.  Her dating life has been significantly affected.  She is
afraid to get close to people because she is afraid they will hurt her.[1]
 She sought counseling for a period of time but could not afford to continue
it.

          The context of Basham’s testimony that
her “heart drops” whenever she hears a knock on the door indicates that Basham
was referring here to the occasion when sheriff’s deputies came to search her
home in response to Beaumont’s false report of embezzlement.

          With regard to the break-ins, Basham
testified that her dating life had been adversely affected because it is
difficult to start a new relationship “with as much emotions as I’m having to
deal with.”  Basham testified, “This experience just consumes me.  It’s like
this is just all that is on my mind all the time.”

          Basham testified that her feeling and
anxieties have not improved in the four years since the Appellants committed the
wrongful acts against her.

          As with the plaintiff in Bentley,
“[t]he record leaves no doubt that [Basham] suffered mental anguish as a result
of [the defamatory] statements.”  See Bentley, 94 S.W.3d at 606.  Other
courts have likewise held that testimony similar to that given by Basham
constitutes some evidence and/or factually sufficient evidence to support an
award of damages for past mental anguish.  See, e.g., Royal Maccabees Life
Ins. Co. v. James, 146 S.W.3d 340, 350-51 (Tex. App.—Dallas 2004, pet.
denied); Ramirez v. Fifth Club, Inc., 144 S.W.3d 574, 591 (Tex.
App.—Austin 2004), rev’d in part on other grounds, 49 Tex. Sup. Ct. J. 863, 2006 Tex. LEXIS 638 (Tex. June 30, 2006); Cram Roofing Co. v. Parker,
131 S.W.3d 84, 92-93 (Tex. App.—San Antonio 2003, no pet.).

          As the Supreme Court has held, the
record must also contain evidence that the amount of damages awarded for mental
anguish is “fair and reasonable.”  See Bentley, 94 S.W.3d at 606 (quoting
Saenz, 925 S.W.2d at 614).  Here, the jury awarded $100,000 for past
mental anguish on Basham’s slander claim.  Texas courts have concluded that comparable
awards were “fair and reasonable” based on testimony like Basham’s.  See,
e.g., Houston Livestock Show & Rodeo, Inc. v. Hamrick, 125 S.W.3d 555,
580-81 (Tex. App.—Austin 2003, no pet.); Ysleta Indep. Sch. Dist. v.
Monarrez, 170 S.W.3d 122, 128-29 (Tex. App.—El Paso 2002), rev’d on
other grounds, 177 S.W.3d 915 (Tex. 2005) (per curiam).  We likewise hold
that the record contains some evidence and factually sufficient evidence to
support the jury’s determination that $100,000 is “fair and reasonable
compensation” for the past mental anguish Basham suffered because of the
defamatory statements.

          Basham’s testified that her
embarrassment, anxiety and other symptoms continued during the four years
leading up to the time of trial and that there has been no improvement.  This
constitutes some evidence and factually sufficient evidence to support an award
of damages for future mental anguish.  See Fifth Club,
Inc. v. Ramirez, 49
Tex. Sup. Ct. J. 863, 869, 2006 Tex. LEXIS 638, at *23-25 (Tex. June 30, 2006).

          The jury awarded $25,000
for future mental anguish on
Basham’s defamation claim.  We hold that the record contains some evidence and
factually sufficient evidence to support the jury’s determination that $25,000
is “fair and reasonable compensation” for the future mental anguish Basham will
suffer because of the defamatory statements.  See Haggar Clothing Co. v.
Hernandez, 164 S.W.3d 407, 423 (Tex. App.—Corpus Christi 2003), rev’d on
other grounds, 164 S.W.3d 386 (Tex. 2005) (per curiam); see also Fifth
Club, 49 Tex. Sup. Ct. J. at 869, 2006 Tex. LEXIS 638, at *23-25.

          With regard to Basham’s claims for
theft and invasion of privacy, she specifically testified that the break-ins
have directly affected her dating life and that she is “consumed” by these
intrusions and they are constantly on her mind.  Although Basham did not testify
that she was afraid to live in her home after the break-ins or that the loss of
her family photos shocked or devastated her, the jury could consider her
testimony about the emotional impact of the break-ins together with her
testimony about the emotional impact of the defamatory statements and conclude
that the break-ins caused additional injury.

          Accordingly, we hold that the record
contains some evidence and factually sufficient evidence to support the jury’s
award of mental anguish damages for Basham’s theft and invasion of privacy
claims.  See Royal Maccabees Life Ins., 146 S.W.3d at 350-51; Ramirez,
144 S.W.3d at 591; Cram Roofing Co., 131 S.W.3d at 92-93.

          The jury awarded Basham $35,000 in
mental anguish damages for theft and $50,000 for invasion of privacy.  We
likewise hold that the record contains some evidence and factually sufficient
evidence to support the jury’s determination that these amounts are “fair and
reasonable compensation” for the mental anguish Basham suffered because of the
theft and invasion of privacy.  See Houston Livestock Show & Rodeo,
125 S.W.3d at 580-81; Monarrez, 170 S.W.3d at 128-29.

          Thus, we overrule Appellants’ third
issue.

Texas
Theft Liability Act

          Appellants contend in their fifth
issue that there is no evidence to support the amount of damages awarded under
the Texas Theft Liability Act.  More specifically, they contend in this issue
that Basham offered no evidence of the value of the property stolen, cannot
recover mental anguish damages under the Act, and is entitled to no more than
nominal damages.  Appellants contend in their sixth issue that the court erred
by awarding additional damages under the Theft Liability Act or, alternatively,
by awarding additional damages in excess of $1,000.

          A person who commits theft is civilly
liable under the Act “for the damages resulting from the theft.”  Tex. Civ. Prac. & Rem. Code Ann. § 134.003(a)
(Vernon 2005).  A “person who has sustained damages resulting from theft may
recover . . . the amount of actual damages found by the trier of fact and, in
addition to actual damages, damages awarded by the trier of fact in a sum not
to exceed $1,000.”  Id. § 134.005(a)(1) (Vernon 2005).

          The Act provides for the recovery of
“actual damages.”  Id. § 134.005(a)(1).  Because the Act does not
further define “actual damages,” we hold that “actual damages” under the Act
are those recoverable at common law.  Cf. Arthur Andersen & Co. v. Perry
Equip. Corp., 945 S.W.2d 812, 816 (Tex. 1997) (“actual damages” recoverable
under DTPA “are those damages recoverable under common law”); Matheus v.
Sasser, 164 S.W.3d 453, 458 (Tex. App.—Fort Worth 2005, no pet.) (same); Houston
Livestock Show & Rodeo, 125 S.W.3d at 582 (same).[2]

          As previously indicated however, the
only element of damages for theft authorized by the charge is mental anguish. 
Although the parties spend much of their argument disputing the type and
quantum of evidence necessary to establish the value of stolen property for
purposes of a claim under the Act, this was not an element of damages included
in the charge.

          When we measure the sufficiency of the
evidence, we do so under the law as submitted in the charge if the complaining
party did not object to the charge.  See Osterberg v. Peca, 12 S.W.3d 31,
55 (Tex. 2000); Ancira Enters., Inc. v. Fischer, 178 S.W.3d 82, 93 (Tex. App.—Austin 2005, no pet.); O’Connor v. Miller, 127 S.W.3d 249, 254 (Tex. App.—Waco 2003, pet. denied).  Neither party objected at trial that the damages
question submitted on Basham’s theft claim omitted an element of damages for
the value of the property stolen.[3] 
Thus, the jury’s award of “actual damages” on Basham’s theft claim can be
upheld only if damages for mental anguish can be recovered under the Act and if
there is some evidence to support an award for mental anguish damages.

          We have already determined that there
is some evidence and factually sufficient evidence to support the jury’s award
of mental anguish damages for Basham’s theft claim.  Therefore, we need decide
only whether such damages can be recovered under the Act.

          Mental anguish damages are not
recoverable as a matter of law for the negligent destruction of property.  City
of Tyler v. Likes, 962 S.W.2d 489, 497 (Tex. 1997); Petco Animal
Supplies, Inc. v. Schuster, 144 S.W.3d 554, 562 (Tex. App.—Austin 2004, no
pet.); Seminole Pipeline Co. v. Broad Leaf Partners, Inc., 979 S.W.2d 730,
754 (Tex. App.—Houston [14th Dist.] 1998, no pet.).  Rather, “[m]ental anguish
damages are recoverable for some common law torts that generally involve
intentional or malicious conduct such as libel.”  Likes, 962 S.W.2d at
495.  Thus, the Supreme Court has upheld an award of mental anguish damages
under section 4.402 of the UCC for wrongful dishonor where the jury found that
the bank acted with malice.  See Farmers & Merchants State Bank of Krum
v. Ferguson, 617 S.W.2d 918, 921 (Tex. 1981); see also Luna v. N. Star
Dodge Sales, Inc., 667 S.W.2d 115, 117 (Tex. 1984) (mental anguish damages
under DTPA upheld where jury found defendant acted knowingly).

          Consistent with these decisions, the
Fourteenth Court of Appeals has concluded:

where a claim of mental anguish is based solely
upon property damage resulting from gross negligence, recovery is contingent
upon evidence of some ill-will, animus, or design to harm the plaintiff
personally.  We believe this rationale is more consistent with the general
principle that emotional distress is not usually recoverable as an element of
property damages unless an improper motive is involved.  

 

Seminole Pipeline, 979 S.W.2d at 757.

          Here, the jury found that Beaumont and
Bellhouse acted with malice when they committed (or conspired to commit) the
theft.  Appellants do not challenge this malice finding.  Therefore, because
the jury found that Appellants acted with malice, we hold that Basham could
recover mental anguish damages under the Theft Liability Act.  See Likes,
962 S.W.2d at 495; Luna, 667 S.W.2d at 117; Farmers & Merchants
State Bank, 617 S.W.2d at 921; Petco Animal Supplies, 144 S.W.3d at
562; Seminole Pipeline, 979 S.W.2d at 757.  Accordingly, we overrule
Appellants’ fifth issue.

          Having determined that the evidence supports
the jury’s award of mental anguish damages under the Act, we now address
Appellants’ sixth issue, in which Appellants contend that Basham can recover
only $1,000 as additional damages under the express terms of the Act.[4]

          Section 134.005(a)(1) provides that “a
person who has sustained damages resulting from theft may recover” actual
damages and additional damages “in a sum not to exceed $1,000.”  Tex. Civ. Prac. & Rem. Code Ann. § 134.005(a)(1).

          We agree with Appellants that, under
the plain language of section 134.005(a)(1), a prevailing plaintiff may recover
no more than $1,000 in additional damages under the Act.  Therefore, we sustain
Appellants’ sixth issue in part.

Loss of Reputation

          Appellants contend in their fourth
issue that there is no evidence to support the jury’s award of damages for loss
of reputation.

          “Our law presumes that statements that
are defamatory per se injure the victim’s reputation and entitle him to
recover general damages, including damages for loss of reputation.”  Bentley,
94 S.W.3d at 604.

          Here, Appellants do not contest that
the statements at issue were defamatory per se.  Basham testified that
the defamatory statements jeopardized the reputation she had established during
her fifteen-year career in the banking industry.  We hold that Basham’s
testimony about the reactions she observed and the “whispering” she heard in
the community after these statements were made supports the jury’s award of $50,000
in damages for loss of reputation.  See id. at 604-07 (observing that
“the evidence support[ed]” an award of $150,000 in damages for loss of
reputation).

          Accordingly, we overrule Appellants’
fourth issue.

Attorney’s Fees

          Appellants contend in their ninth
issue that there is no evidence or factually insufficient evidence to support
the attorney’s fee award.

          Section 134.005(b) of the Act provides
that a prevailing plaintiff may recover “reasonable and necessary attorney’s
fees.”  Tex. Civ. Prac. & Rem. Code
Ann. § 134.005(b) (Vernon 2005).

          Here, Basham’s counsel testified that Basham
and his firm have a contingent fee contract whereby counsel would receive
one-third of any recovery.[5] 
Counsel testified that he charges $200 per hour and that his billing records
indicated that approximately $190,000 in attorney’s fees had been incurred at
the time of trial.  He stated that these fees were reasonable and necessary and
consistent with the customary rate in the Cleburne area.  Counsel concluded by
estimating that about two-fifths of these attorney’s fees were attributable to
Basham’s theft and sexual harassment claims.  Appellants made no objection to
counsel’s testimony on this issue.

          Appellants’ counsel testified to his
attorney’s fees as well.  Appellants’ counsel testified that he believed $240
per hour to be a reasonable attorney’s fee for this type of case.  Appellants’
counsel testified that approximately $113,000 in attorney’s fees had been
incurred on Appellants’ behalf at the time of trial.

          Appellants now contend that the
testimony of Basham’s counsel is not competent evidence to support the
attorney’s fee award because the testimony is wholly conclusory.  Although an
objection must be made to challenge the reliability of an expert’s testimony,
no trial objection is required “[w]hen the testimony is challenged as
conclusory or speculative and therefore non-probative on its face.”  Coastal
Transp. Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 233 (Tex. 2004).  Expert testimony is considered “conclusory or speculative” when it has no
factual substantiation in the record.  See United Servs. Auto. Ass’n v.
Croft, 175 S.W.3d 457, 463-64 (Tex. App.—Dallas 2005, no pet.); Gabriel
v. Lovewell, 164 S.W.3d 835, 846 (Tex. App.—Texarkana 2005, no pet.).

          Here, Basham’s counsel’s testimony is
supported by his billing records and his stated familiarity with attorney’s
fees charged in the area.[6] 
Thus, we reject Appellants’ contention that counsel testimony is conclusory on
its face.  See Hachar v. Hachar, 153 S.W.3d 138, 143 (Tex. App.—San
Antonio 2004, no pet.); Marquez v. Providence Mem’l Hosp., 57 S.W.3d 585,
596 (Tex. App.—El Paso 2001, pet. denied).

          Counsel testified that $200 was a
reasonable hourly rate for the area and that $190,000 was a reasonable and
necessary attorney’s fee for his representation.  Counsel offered his billing
records to support his testimony.  Counsel also segregated his attorney’s fees
to the point that approximately two-fifths were attributable to Basham’s sexual
harassment and theft claims, the two claims then pending for which the jury
could award attorney’s fees.

          The court subsequently granted
Basham’s oral motion to dismiss her sexual harassment claim.  Thus, the jury
awarded attorney’s fees of approximately one-fifth the amount counsel testified
to.

          Because the jury awarded approximately
one-half of the attorney’s fees requested and because Appellant’s counsel
testified that an hourly rate twenty percent higher than Basham’s counsel
charged was reasonable, we hold that there is some evidence and factually
sufficient evidence to support the attorney’s fee award of $40,000.  Cf.
Cantu v. Moore, 90 S.W.3d 821, 825 (Tex. App.—San Antonio 2002, pet.
denied) (upholding award of trial attorney’s fees where jury “made its own
calculation” regarding amount of attorney’s fees incurred during trial and
added those to attorney’s fees incurred before trial).

          Accordingly, we overrule Appellants’
ninth issue.

Special Exceptions

          Appellants contend in their first
issue that the court abused its discretion by denying their special exceptions
to Basham’s pleadings on her claim of defamation.  Specifically, they contend
that Basham should have pleaded the alleged defamatory statements with more
particularity.

          Appellants filed special exceptions in
response to Basham’s second amended petition.  The court overruled Appellants’
special exceptions.  Basham then filed a third amended petition which made
essentially the same allegations which were the object of Appellants’ special
exceptions.  However, Appellants did not renew or reurge their special
exceptions.

          Basham contends that, because they did
not, they have not preserved this issue for appellate review.  Our research
discloses at least two cases which support Basham’s position.  See Alpert v.
Crain, Caton & James, P.C., 178 S.W.3d 398, 404 n.3 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); State ex rel. White v. Bradley, 956 S.W.2d 725,
744-45 (Tex. App.—Fort Worth 1997), rev’d on other grounds, 990 S.W.2d 245
(Tex. 1999).  The approach taken in these cases is similar to the
well-established rule that any error in the admission of evidence is deemed
harmless if the same or similar evidence is subsequently admitted without
objection.  See Volkswagen of Am., Inc. v. Ramirez, 159 S.W.3d 897, 907
(Tex. 2004).

          Thus, we hold that any error in the
court’s denial of Appellants’ special exceptions was rendered harmless by
Appellants’ failure to reurge their special exceptions in response to Basham’s
third amended petition.  See Alpert, 178 S.W.3d at 404 n.3; Bradley,
956 S.W.2d at 744-45.

          Accordingly, we overrule Appellants’
first issue.




Jury Charge

          Appellants contend in their second
issue that the court abused its discretion by submitting a single question in
the charge for multiple slander allegations.

          Rule of Civil Procedure 277 provides
in pertinent part, “In all jury cases the court shall, whenever feasible,
submit the cause upon broad-form questions.”  Tex.
R. Civ. P. 277.  Appellants contend in essence that broad-form submission
is infeasible when a plaintiff alleges two or more defamatory statements.  They
cite Crown Life Insurance Co. and Harris County v. Smith for the
proposition that the charge as submitted was erroneous because it cannot be
determined whether the jury based its verdict on an invalid theory of
liability.  Smith, 96 S.W.3d 230, 233-34 (Tex. 2002); Crown Life Ins.,
22 S.W.3d at 388-89.  We disagree.

          The cited cases are distinguishable
from this case because in the cited cases, the appellants actually identified
the “invalid theory of liability.”  In Crown Life Insurance, the invalid
theories were four of the five DTPA claims submitted in a single question which
were invalid because the plaintiff did not have standing as a consumer to bring
them.  See 22 S.W.3d at 388.  In Smith, the invalid theories were
damages claims for loss of earning capacity as to one plaintiff and physical
impairment as to the other, which claims were invalid because there was no
evidence to support them.  See 96 S.W.3d at 232.

          In both cases, after the charge
errors were identified, the issue became whether these errors could be found
harmless because both charges contained valid theories of liability which could
conceivably support the jury’s respective verdicts.  The Supreme Court
concluded that, when a single question in the charge combines valid and invalid
theories of liability, the error in submitting the invalid theory “is harmful
when it cannot be determined whether the improperly submitted theories formed
the sole basis for the jury’s finding.”  Crown Life Ins., 22 S.W.3d at
389; accord Smith, 96 S.W.3d at 233-34.

          Here, the defamation question
essentially identifies three different defamatory statements which Basham
alleges to have been made.  Appellants do not identify any of these statements
as being an invalid basis for recovery either because it is not defamatory as a
matter of law or because there is no evidence in the record to show that they
made the statement.  Rather, Appellants argue that the combination of these statements
in a single question presents an issue of “potential error.”  However, the
Supreme Court clearly stated in Smith that the harmless error rule
announced in Crown Life Insurance and Smith applies only to
“actual errors” and not to “imagined or potential ones.”  See 96 S.W.3d at
235.

          Accordingly, we overrule Appellants’
second issue.

Prejudgment Interest

          Appellants contend in their tenth
issue that the court erred by the manner in which it calculated prejudgment
interest because, as argued in other issues, the amount of compensatory damages
awarded is excessive.  However, we have overruled each of Appellants’ issues
challenging the amount of compensatory damages awarded.  Accordingly, we
overrule Appellants’ tenth issue.

Cumulative Harm

          Appellants contend in their eighth
issue that the court committed several errors which resulted in “cumulative
harm” because the court allowed “the case to be tried generally on the issue of
whether or not Linda Beaumont was a bad person.”

          Appellants argue that the court erred
by: (1) denying their special exceptions; (2) denying their summary judgment
motion(s); and (3) admitting irrelevant evidence of “bad acts supposedly
committed by Beaumont.”  We have already determined that Appellants have not
preserved their challenge to the denial of their special exceptions.  They
acknowledge that the erroneous denial of a summary judgment motion “is
generally not itself subject to review for reversible error.”  Accordingly, we
construe their eighth issue as a contention that the repeated admission of
evidence of bad acts caused cumulative harm.

          Basham responds that evidence of other
bad acts was relevant and admissible under Rule of Evidence 404(b) to show
malice and to show that Beaumont engaged in a pattern of discriminatory conduct
in the workplace.

          Appellants complain that the court
abused its discretion by admitting the following evidence:

(1)              
that company policy strictly
prohibits the consumption or use of alcoholic beverages or illegal substances
while on company property, that an employee of the Ranch was not disciplined
for smoking marihuana on the premises, and that Beaumont instructed the staff
“not to bother” her with these allegations;

 

(2)              
that company policy
prohibits sexual harassment, that several employees had reported being
subjected to some form of sexual harassment (which reports Beaumont largely
denied having been made), and that Beaumont had not taken disciplinary action
in most cases;

 

(3)              
that Beaumont had instructed
Basham and another employee to “sleep with the chef” so he would “keep his
hands off the girls in the kitchen”;

 

(4)              
that Beaumont had instructed
employees to spread rumors about the local mayor because Bellhouse had been
given a ticket for violating a municipal ordinance;

 

(5)              
that Beaumont had instructed
Williams to lie at a Texas Workforce Commission hearing on a sexual harassment
claim so the complainant would not prevail and that in Beaumont’s opinion the
complainant “didn’t deserve a dime”;

 

(6)              
that “many” of an employee’s
paychecks from the Ranch were returned due to insufficient funds;

 

(7)              
that Beaumont, in one
employee’s opinion, is “evil personified” and “one of the cruelest, most vile
people I’ve ever met”;

 

(8)              
that Beaumont would
encourage employees to perjure themselves (as she did with Williams) to retaliate
against other employees who registered complaints;

 

(9)              
that the Ranch had failed to
pay a contractor’s bill in full for some projects;

 

(10)          
that Beaumont had instructed
this same contractor to look in a terminated employee’s house on the Ranch
property (and kick in a locked bedroom door) to find a notebook with
information about a recent event at the Ranch; and

 

(11)          
that this terminated
employee was owed several thousand dollars by the Ranch for company expenses he
had charged to his own credit card.

 

          As Appellants summarize this
testimony, it allowed Basham “to try Beaumont generally as a bad person who
allegedly slandered the mayor, didn’t put a stop to crude behavior from her
employees, and failed to discipline drug abusers on her property.”

          Evidence of extraneous conduct is
admissible under Rule 404(b) to show malice in a defamation suit.  See
Porous Media Corp. v. Pall Corp., 173 F.3d 1109, 1117-18 (8th Cir. 1999). 
An employer’s pattern of behavior can be probative of whether the employer
engaged in unlawful employment practices.  See Haggar Clothing Co. v.
Hernandez, 164 S.W.3d 386, 389 (Tex. 2005) (per curiam); Passons v.
Univ. of Tex., 969 S.W.2d 560, 564 (Tex. App.—Austin 1998, no pet.); Durbin
v. Dal-Briar Corp., 871 S.W.2d 263, 268-69 (Tex. App.—El Paso 1994, writ
denied).

          Therefore, we cannot say that the
court abused its discretion by admitting the evidence complained of. 
Accordingly, we overrule Appellants’ eighth issue.




Conclusion

We reverse that portion of the judgment awarding
additional damages of $10,000 under the Theft Liability Act and render judgment
that Basham recover $1,000 in additional damages under the Act.  The remainder
of the judgment is affirmed.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed in part,
Reversed

          and Rendered
in part

Opinion delivered and
filed August 30, 2006

[CV06]









[1]
          Basham explained that the pain
and anxiety she has experienced as a result of the wrongful acts committed
against her is different than that she experienced after her divorce because,
after the divorce, she “started going out” again.

 





[2]
          The DTPA currently provides that
a prevailing plaintiff may recover “economic damages.”  Tex. Bus. & Com. Code Ann. § 17.50(b)(1) (Vernon Supp. 2006).  Before 1995, the statute provided for the recovery of “actual
damages.”  See Act of May 29, 1989, 71st Leg., R.S., ch. 380, § 2, 1989 Tex. Gen. Laws 1490, 1491 (amended 1995).  Although the statutory language has changed, Texas courts continue to treat the term “economic damages” as synonymous with “actual
damages.”  See, e.g., Dal-Chrome Co. v. Brenntag Sw., Inc., 183 S.W.3d 133,
143-44 (Tex. App.—Dallas 2006, no pet.); Matheus v. Sasser, 164 S.W.3d 453,
458-59 (Tex. App.—Fort Worth 2005, no pet.); Garza v. Chavarria, 155
S.W.3d 252, 257 n.2 (Tex. App.—El Paso 2004, no pet.).

 





[3]
          Instead, Appellants objected
that Basham should not be allowed to recover mental anguish damages for her
theft claim.





[4]
          Because we have determined that
the jury’s malice finding and the evidence on mental anguish provide a
sufficient basis to uphold the award of mental anguish damages, we need not
address Appellant’s initial contention in their sixth issue, namely, that
Basham cannot recover additional damages under the Act because she failed to
prove up actual damages.





[5]
          According to the terms of the
contract, which was admitted in evidence, counsel will receive 40% of any
recovery because an appeal has been pursued.





[6]
          Basham’s counsel testified that
his $200 hourly rate was reasonable and “probably lower than customary based on
my asking a number of attorneys in this Cleburne area.”  Conversely,
Appellants’ counsel stated that his hourly rate was $240 “which I believe to be
a reasonable fee . . . for this type of case in Johnson County.”  Appellants’
counsel, whose office is in Denton County, provided no basis in his testimony
to conclude that he was familiar with the customary rate charged by attorneys
in Johnson County.